LOCAL UNION NO. 657 OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA OF SHEBOYGAN COUNTY, Plaintiff-Appellant,

v.

William SIDELL et al., Defendants-Appellees.

No. 76–1819.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1977.

Decided April 12, 1977.

Rehearing En Banc Denied May 19, 1977.

David Rabinovitz, Samuel Zelpe, Sheboygan, Wis., for plaintiff-appellant.

Gerry M. Miller, Walter F. Kelly, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

This complaint was brought under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)). The gravamen of the complaint by plaintiff Local 657 of the United Brotherhood of Carpenters and Joiners of America was that the three defendants, the Brotherhood, its general president William Sidell, and its agent in Sheboygan, Wisconsin, had violated the Brotherhood's constitution by Sidell's August 4, 1975, letter ordering Local 657 to affiliate with the Fox River Valley District Council of the Brotherhood and by seeking to effectuate that order.[1] Plaintiff sought a declaratory judgment, a preliminary and ultimately a permanent injunction prohibiting defendants from enforcing the affiliation order. Defendants filed both an answer and a motion for summary judgment, urging lack of subject-matter jurisdiction and in any event that they acted within their constitutional authority. Affidavits and exhibits were also filed by the parties.

In 416 F.Supp. 890, the district court granted the defendants' motion for summary judgment, denied the injunction applica-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. In this respect, plaintiff maintains that the Brotherhood's General Executive Board's interpretation of the constitution to prohibit an internal appeal from the directive to the next quadrennial convention was incorrect. On appeal, plaintiff has abandoned a theory put forth below that the directive violated its Fourteenth Amendment due process rights.

tion and dismissed plaintiff's complaint on the ground that the court lacked subject-matter jurisdiction under Section 301(a) of the Labor Management Relations Act. Before reaching the jurisdictional question, the opinion stated that the reasons for the Brotherhood's decision to require the plaintiff to affiliate with the District Council and its impact upon the plaintiff "are amply delineated in the record." The court found that the Brotherhood's affiliation directive was made pursuant to Section 6A of its constitution. (Mem. op. at p. 891.)

Next the district court's opinion concluded that it lacked subject-matter jurisdiction because otherwise it would be required to interfere in the internal affairs of the unions and because the case presented "issues of intra-union autonomy rather than a significant threat to industrial peace" (mem. op. at p. 892). Although we disagree as to lack of jurisdiction, we affirm on the merits. *United States v. General Motors Corp.,* 171 U.S.App.D.C. 27, 518 F.2d 420, 441 (1975).

## I. Subject-Matter Jurisdiction.

Section 301(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties" (29 U.S.C. § 185(a)).

Defendants assert that this case involves an alleged violation of the Brotherhood's constitution rather than any contract violation. This, of course, assumes the proposition that a union constitution cannot be a Section 301(a) "contract." However, the Supreme Court has held that Section 301(a)

is to be liberally construed both as a grant of subject-matter jurisdiction[2] and as an authorization to develop a body of federal common law to provide the substantive rules for resolving labor disputes.[3] And the "legislative history makes clear that the basic purpose of § 301(a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations." *Dowd Box Co. v. Courtney,* 368 U.S. 502, 508–509, 82 S.Ct. 519, 523, 7 L.Ed.2d 483.

Defendants concede, as they must, that "contracts" between two labor organizations are generically enforceable through the mechanism of a Section 301(a) suit. *Lion Dry Goods, supra,* 369 U.S. at 26, 82 S.Ct. 541. Rather, they contest whether a union constitution is a Section 301(a) "contract" and whether a local and its parent international are sufficiently distinct entities to be two separate labor organizations within the meaning of Section 301(a). These analytical lines tend to blend together but we still believe it useful to address them *seriatim.*

As an initial matter, we should note that the legislative history of Section 301(a) does not answer these questions. The "contracts between labor organizations" clause was added in conference, and the Conference Report merely states that:

"Subsection (a) provides that suits for violation of contracts between labor organizations, as well as between a labor organization and an employer, may be brought in the Federal courts." 2 N.L.R.B., Legislative History of the Labor Management Relations Act, 1947 at 1535, 1543.

■ The general term "contract" is meaningless in the abstract unlimited sense since, as Chief Justice Marshall noted long ago, such a huge panoply of relationships can conceivably be comprehended by the word. *Trustees of Dartmouth College v.*

---

**2.** *Retail Clerks International Ass'n, Locals 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503; *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

**3.** *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593.

*Woodward,* 17 U.S. (4 Wheat.) 518, 627–628, 4 L.Ed. 629. Writing then without statutory constraint, we start with the premise that " '[c]ontract in labor law is a term the implication of which must be determined from the connection in which it appears.' " *Lion Dry Goods, supra,* 369 U.S. at 28, 82 S.Ct. at 548. As Judge Sobeloff noted in holding a union constitution to be a Section 301(a) "contract" in *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 917 (4th Cir. 1963), certiorari denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142, "[t]he Supreme Court itself has recognized that under state law this is the generally accepted characterization of union constitutions," citing *International Ass'n of Machinists v. Gonzales,* 356 U.S. 617, 618–619, 78 S.Ct. 923, 2 L.Ed.2d 1018.[4] The First, Second and Sixth Circuits have followed the *Parks'* conclusion that a union constitution is a Section 301(a) "contract." *Local Union 1219 v. United Brotherhood of Carpenters and Joiners,* 493 F.2d 93, 95–96 (1st Cir. 1974); *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1247–1249 (2d Cir. 1970); *Trail v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 542 F.2d 961, 966–968 (6th Cir. 1976).

Defendants cite *Hotel and Restaurant Employees Local 400 v. Svacek,* 431 F.2d 705, 706 (9th Cir. 1970), for the proposition that a union constitution cannot be used as a "contract for jurisdiction under § 301 in an intra-union problem unrelated to a collective bargaining agreement" (Br. 14 n. 17). But the Ninth Circuit's disagreement was limited to appellant's "contention that the union constitution is a 'contract' authorizing the District Court to entertain a dispute between a local union and a member." *Id.* *Svacek* does not truly support defendants because there the union was seeking to impose a $300 fine upon Svacek for crossing a union picket line during a strike. The *per curiam* opinion distinguished *Parks* on the ground that the Fourth Circuit case involved "actions between local and international unions and were 'contracts' " within Section 301(a) and were "suits between any such labor organizations." 431 F.2d at 706. Since the *Svacek* case purports to be in line with *Parks,* it is not an authority for the proposition that a union constitution is not a "contract" within Section 301(a) in a situation such as the present one.[5]

The most recent district court case in the Third Circuit also holds that a union constitution is a Section 301(a) contract. *Keck v. Employees Independent Association,* 387 F.Supp. 241 (E.D.Pa.1974). To use the words of the Sixth Circuit in *Trail, supra,* 542 F.2d at 968, "[w]e see no reason why [a Section 301(a)] contract might not be expressed in a union constitution, a local union charter, or a combination of both."[6]

**4.** Section 301(a) must of course be interpreted as a matter of federal common law. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972. "But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." *Id.*

**5.** In *1199 D.C. National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees,* 175 U.S.App.D.C. 70, 533 F.2d 1205, 1207–1208 (1976), the Court of Appeals for the District of Columbia did not reach the issue whether a union constitution was a Section 301(a) contract because the complaint revealed only an intra-union conflict and was devoid of any concrete allegations of actual threats to industrial peace. However, the opinion cited nothing in the language of Section 301(a) or its legislative history which would permit a court to avoid the issue of whether a union constitution is a Section 301(a) contract in the absence of such allega-

tions. Apparently the court implicitly decided that under the circumstances the local and its parent union were not separate labor organizations within the meaning of Section 301(a).

**6.** We limit our holding to the situation where there is a written constitutional document creating rights and duties between two labor organizations. Where the claimed right is founded only on a claimed intra-union custom, jurisdiction should not be asserted. *Abrams, supra,* 434 F.2d at 1248; *Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders District Council of Greater New York,* 2 Cir., 291 F.2d 496, 507 (Friendly, J., concurring). We so limit our holding because "this court fully recognizes its weighty obligation not to expand [an] initial grant of [subject-matter] jurisdiction into a carte blanche for unrestrained judicial [substantive] inventiveness in the areas of union structure and collective bargaining policy." *Parks, supra,* 314 F.2d at 917.

■■■ The thrust of defendants' argument is that a local and its national are not separate labor organizations within the meaning of Section 301(a) under the circumstances of this case (see Br. 15–24). "The basic fear engendered by a broad interpretation of Section 301 is that the federal courts will become involved in solely internal union matters." *Keck, supra,* 387 F.Supp. at 249. Cf. Comment, Applying the "Contracts Between Labor Organizations" Clause of Taft-Hartley Section 301: A Plea for Restraint, 69 Yale L.J. 299, 307–308 (1959). Since there "is, of course, a general national policy against judicial interference in the internal affairs of unions" [7], *Rota v. Brotherhood of Railway, Airline and Steamship Clerks,* 489 F.2d 998, 1003 (7th Cir. 1973), the defendants argue that Section 301(a) jurisdiction should only be asserted in a dispute between a local and parent union, if at all, when the constitutional breach presents a concrete actual threat to industrial peace (Br. 15–19). It is true that actual threats to industrial peace existed in *Parks, supra,* and that Judge Sobeloff directed his immediate attention to disputes (such as the one in *Parks*) which "have traumatic industrial and economic repercussions." 314 F.2d at 916. But in an accompanying footnote, Judge Sobeloff made clear that Section 301(a) was not limited to present threats to industrial peace:

"It has been suggested that a holding of jurisdiction under § 301(a) would tend to promote at least two congressional policies. (1) A major purpose of § 301(a) is to overcome state law jurisdictional difficulties and thereby make unions amenable to suits as entities and to subject their funds to judgments for violations of contracts. See *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 511–513, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Section 301(a)

jurisdiction in cases like Local 28's would make this responsibility more effective. (2) In 1959, with the passage of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 401 et seq., Congress undertook extensive and detailed statutory regulation of certain aspects of internal union affairs. It is suggested that even assuming the LMRDA and § 301(a) may not be construed *in pari materia,* it would serve congressional policy to construe § 301(a) broadly, thereby making a whole remedy available in a federal court when the same conduct inflicts injury, adjudicable under LMRDA, upon individual members and also injury, not adjudicable under LMRDA, upon local unions." *Id.* n. 50.

Indeed, in *Local Union 1219, supra,* jurisdiction was sustained between a local and its international where no present threat to industrial peace was extant. Local 1219 had been given a charter to represent millwrights in Maine, a jurisdiction which had previously been asserted by the carpenter locals. Objecting to this inroad on their influence, the carpenter locals refused to obey the international's order to cease bargaining for Maine's millwrights. The international caved in to the carpenter local's pressure and as a result Local 1219 was unable to place its members in jobs. Consequently, it lost most of its membership. There were no strikes or other overt breaches of industrial peace. In sum, *Local 1219* seems to present the same sort of external effects which will be manifested here when plaintiff's collective bargaining agreement expires on June 1, 1977. As Judge Aldrich noted in *Local 1219,* when a local and international union's

"relationship is a matter of contract, and that contract directly concerns the representation of workers in collective bar-

---

7. If should be noted that at least one commentator believes that even the federalization of the entire field of internal union affairs is supportable:

"Much can be said * * * for the uniformity that would result in the law of internal union affairs through the development of a federal common law." Beaird, Union Trusteeship Provisions of the Labor-Management Reporting

and Disclosure Act of 1959, 2 Ga.L.Rev. 469, 518 (1968).

See, e. g., *Welch v. Breckenridge,* 284 F.Supp. 125 (W.D.Ark.1968); *Brotherhood of Painters v. Brotherhood of Painters, Local Union 127,* 264 F.Supp. 301 (N.D.Cal.1966); *Burlesque Artist Ass'n v. American Guild of Variety Artists,* 187 F.Supp. 393 (S.D.N.Y.1958).

gaining, there is no reason to assume that Congress did not intend the statute to apply simply because the two parties to the contract are related." 493 F.2d at 96.

In support of their argument, defendants primarily rely on *1199 D.C., National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees*, 175 U.S.App.D.C. 70, 533 F.2d 1205 (1976) and *Smith v. United Mine Workers of America*, 493 F.2d 1241 (10th Cir. 1974). In *1199 D.C.*, the District of Columbia Local was advised by the parent union that it was being merged into the Baltimore Local and that officials of the Baltimore Local would govern the affairs of the members of the old District of Columbia Local. *1199 D.C.* distinguished *Local 1219, supra*, and *Parks, supra* in the following terms:

"In the case at hand, not only was there no local charter, but more importantly, there was no allegation that any employer was confronted with the dilemma of choosing between competing factions of the same union. Unlike *Local 1219* and *Parks*, then there were no concrete allegations of actual threats to industrial peace. Furthermore, at oral argument before this court the plaintiffs offered no suggestion that employers were forced to make untenable choices concerning union representation. Therefore, the allegations concerning the union constitution reveal only an intra-union conflict." 533 F.2d at 1208.

However, in the present case, plaintiff does possess a charter and has posited a similar employer dilemma. In its complaint, plaintiff alleged:

"[t]hat the plaintiff Local has been in existence over seventy-five years and has established stable and harmonious working relationships through contracts with contractors of Sheboygan County, Wisconsin and that to cause the plaintiff Local to be governed by contracts formulated and promulgated by the Fox River Valley District Council as mandatory upon plaintiff Local would cause immeasurable harm and interference with its present relationship and contracts with its employers."

Thus here we have an allegation affecting the local's relationship with employers, rather than the mere intra-union organizational change involved in *1199 D.C.*[8]

Likewise in *Smith*, pursuant to a court-ordered election, new officers dictated a merger of several locals. The central organizational changes challenged by the affected locals in *Smith* simply were viewed as "internal union affairs which have no external application to industrial peace or to collective bargaining  *  *  *" (493 F.2d at 1243). The *Smith* court did not quarrel with the notion that "§ 301(a) must be liberally applied to promote industrial peace, but that principle has no application" where the dispute concerns an internal structural change with no extrinsic effects which are alleged to impact adversely on the local's relationships with its customary employers. *Id.*

We believe, as did the *Smith* court, that a federal court should be chary of extending the scope of Section 301(a) to comprehend federal court involvement in the control and supervision of purely internal union disputes. See also *Parks, supra*, 314 F.2d at 906–907. But here there would be no such involvement. The dispute is resolvable on written instruments "of definite content and tenor," so that the district court need not divine the governing principles out of an ephemeral custom established by the distillation of a "welter of motions and cross-motions." *Local 33, supra*, 291 F.2d at 506–507 (Friendly, J., concurring). Indeed, Judge Gordon found it easy to resolve the union constitutional question presented by

---

**8.** Plaintiff's pleading of external effects is not "a bald conclusion unsupported by any factual allegation to give it substance." *1199 D.C., supra*, 533 F.2d at 1208 n. 1. The affidavit adduced provides the required factual allegations (see Plaintiff's Br. 29–30). The fact that the external effects may not be actually felt until the June 1, 1977, expiration date of plaintiff's collective bargaining agreement is immaterial since this only temporarily suspends the occurrence of external effect rather than rendering it speculative.

plaintiff (mem. op. 416 F.Supp. at p. 891). In sum, it is fair to say that

"[w]hen it is clear that an action is not intended to enforce internal union customs and practices and the relationship between the parties is contractual and may effect [sic] labor-management relations, there is no reason to assume Congress did not intend Section 301(a) to apply." *Keck, supra,* 387 F.Supp. at 250. See also *Local Union 1219, supra,* 493 F.2d at 95–96.

## II. *The Merits*

■ Addressing the merits, we hold the district judge's conclusion that the Brotherhood's affiliation order was supported by Section 6A of its constitution was correct. That Section provides in pertinent part:

"The United Brotherhood is empowered, upon agreement of the Local Unions and the Councils directly affected, or in the discretion of the General President subject to appeal to the General Executive Board, *where the General President finds that it is in the best interests of the United Brotherhood and its members, locally or at large,* to establish or dissolve any Local Union or Council, to merge or consolidate Local Unions or Councils, to establish or alter the trade or geographical jurisdiction of any Local Union or Council, to form Councils and *to* permit, prohibit, or *require the affiliation with* or disaffiliation from any Council by any Local Union, including the right to establish state-wide, province-wide and regional Local Unions or Councils having jurisdiction over specified branches or subdivisions of the trade." (Emphasis supplied.)

As Exhibit A to the complaint shows, defendant general president Sidell's letter of August 4, 1975, concluded that "the best interest of the membership would be served by Local Union 657 Sheboygan being affiliated with the Fox River Valley District Council." Although not so required because of the disjunctive phraseology of Section 6A, Sidell's letter of September 12, 1975, to plaintiff detailed the reasons why the affiliation directive advanced the inter-

ests of plaintiff local and the entire at-large membership of the United Brotherhood (Exhibit F to defendant's motion for summary judgment affidavit). Plaintiff seemingly concedes that Sidell was thereby attempting to consider the best interests of the local in conjunction with the interests of the membership at large (Br. 15), but claims plaintiff's parochial interests adverse to affiliation manifestly outweigh the at-large membership's interests in favor of affiliation. Since plaintiff does not claim that this decision was tainted by bad faith nor that it did not represent the general president's actual best judgment as to how the plaintiff's and the entire membership's interests could best be advanced, it is not our place to balance the competing interests. This suit being for breach of contract, we are not empowered to rewrite the Brotherhood's constitution to strip Sidell of his authority to require this affiliation. *Parks, supra,* 314 F.2d at 917. Under Section 6A, the affiliation order may stand even though it does not meet with plaintiff's approval, for this part of the union's constitution has delegated this discretionary decisional authority to the general president where, as here, he has found it in the best interests of the Brotherhood and its members "locally or at large [§ 6A]," to require plaintiff's affiliation with the District Council. As even plaintiff has admitted, this Court should not second-guess the Brotherhood in the determination of its internal affairs (Br. 16), and we will abide by this admonition here, *Parks, supra,* 314 F.2d at 906–907.

■ Plaintiff, also argues that its appeal to the Brotherhood's next general convention from the General Executive Board's November 3, 1975, denial of its appeal from the general president's August 4, 1975, affiliation order should have been allowed (Exhibit C to complaint). The General Executive Board dismissed the initial appeal "because it would be in the best interests of the membership" to require affiliation for the reasons given in the general president's September 12, 1975, letter (Exhibit B to complaint and Exhibit F to motion for sum-

mary judgment affidavit). On its face, Section 6A, under whose authority the affiliation order issued, permitted plaintiff to appeal only to the General Executive Board. As explained to plaintiff by the General Executive Board (Exhibit D to complaint), its decision was final and not appealable to the general convention because Section 57G provides in pertinent part (Exhibit A to motion for summary judgment):

" * * * Also, decisions of the General Executive Board in all cases involving geographical jurisdiction, mergers, consolidation, and formation of Councils shall be final."

In turn, Section 15D of the constitution permitted the General Executive Board to "decide points of law * * * that may be submitted to it" (Exhibit A to motion for summary judgment affidavit). Therefore its interpretation of "formation of Councils" as used in Section 57G as including the "affiliation of Local Unions with existing District Councils" (Exhibit D to complaint) will not be disturbed since it is not a patently unreasonable construction of the constitutional language. *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971).

### III. *Disposition*

Although the opinion below is erroneous with respect to subject-matter jurisdiction, it correctly held that the affiliation "directive was made pursuant to the constitution" of the Brotherhood (mem. op. 416 F.Supp. at 891). Accordingly, the summary judgment for defendant is affirmed.