601 F.2d 675
 102 L.R.R.M. (BNA) 2587, 86 Lab.Cas. P 11,418
 DRYWALL TAPERS AND POINTERS OF GREATER NEW YORK, LOCAL 1974,
and
Charles Long et al., Individually, etc., Appellants,
v.
OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL
ASSOCIATION et al., Appellees.
 No. 398, Docket 78-7352.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 15, 1978.
Decided June 29, 1979.
 
 Burton H. Hall, New York City, for appellants.
 Donald J. Capuano, Washington, D. C. (O'Donoghue & O'Donoghue, Robert Matisoff, Washington, D. C., Cohen, Weiss & Simon, Robert S. Savelson, New York City), for appellees OPCMIA and Locals 202 and 852.
 Mirkin, Barre, Saltzstein & Gordon, P. C., Jeffrey Kreisberg, Great Neck, N. Y., for appellee OPCMIA Local 60.
 Thomas X. Dunn, Richard M. Resnick, Washington, D. C. (Sherman, Dunn, Cohen & Leifer, Washington, D. C., of counsel), for amicus curiae Joint Administrative Committee of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry.
 Before WATERMAN, MANSFIELD and OAKES, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 Plaintiffs below, Drywall Tapers and Pointers of Greater New York, Local 1974 and certain individual members (Painters), appeal from a memorandum decision of the United States District Court for the Southern District of New York (Metzner, J.) dismissing their complaint for breach of contract under § 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)) and dissolving a preliminary injunction previously entered against defendants Operative Plasterers' and Cement Masons' International Association (Plasterers). The district court determined that the dispute was a jurisdictional dispute involving the issue of whether the performance of a certain construction process was actually a job for Painters or for Plasterers, and concluded that the issue having been fully resolved pursuant to established industrial arbitration procedures there was no reason to entertain the lawsuit. We affirm the district court.
 
 
 2
 The dispute concerns the usage of "Sta-Smooth," a taping and pointing material, and whether its use falls within the work province of Painters or Plasterers. Both Painters and Plasterers are members of the Building and Construction Trades Department of the AFL-CIO (Department) and are, therefore, bound by its arbitral and administrative procedures. In 1947 the Department issued a decision of record[1] which assigned taping and pointing work by the nature of the material used plasterers did work involving plaster materials and painters did work involving adhesive materials. In 1961, however, Plasterers and Painters were signatories to a Memorandum of Understanding (Memorandum) which classified all pointing and taping, regardless of the material used, as painters' work, so long as the drywall surfaces were not to receive plaster or acoustical finishes. The 1961 Memorandum was to supersede all prior understandings or agreements. The 1947 decision of record and the 1961 Memorandum embody the jurisdictional definitions with which we are concerned in the present lawsuit.
 
 
 3
 The "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry" (Plan) governs the manner in which disputes over work assignments were to be settled. The signatory parties to the Plan, and who have agreed to be bound by it, are, on the one hand, the Department on behalf of its affiliated unions, and on the other hand, ten employer associations on behalf of their members. The Joint Administrative Committee, composed of representatives of labor and management, oversees the operation of the Plan. A dispute over a work assignment is first presented to a local board, whose decision is appealable to the Impartial Jurisdictional Disputes Board (Disputes Board) of the Department. A Disputes Board decision may then be appealed to the Appeals Board. The Joint Administrative Committee (JAC) oversees the Appeals Board and has authority under the Plan to certify as "repetitive" certain jurisdictional issues. A repetitive issue is first referred to the Presidents of the International Unions for resolution; and, in the event no settlement is reached within 90 days, the issue is referred to a Hearings Panel for a national decision binding on all member Unions.
 
 
 4
 In December 1973, JAC certified the issue of entitlement to prefinishing taping and pointing work to the Unions for resolution and instructed the Disputes Board to defer action on all appeals involving that jurisdictional issue. Prior to this time, relying on the 1961 Memorandum, the Disputes Board had, during a three-month period in 1973, resolved at least ten separate jurisdictional disputes. Both Painters and Plasterers protested the deferral order issued by the JAC, and, in response to their protests, received assurances from JAC that the matter would be considered at its next meeting.
 
 
 5
 In March 1975 Painters requested arbitration of the dispute concerning the assignment of prefinishing work by the local arbitration board under the New York Plan, the Building Trades Employers' Association (BTEA). BTEA determined, without reference to the 1961 Memorandum, that "Sta-Smooth" was a plaster material and, therefore, by virtue of the 1947 decision of record, it was within the work province of Plasterers. Painters appealed the BTEA decision to the Disputes Board, which initially agreed to hear the appeal but later postponed the hearing. The Disputes Board ultimately refused to entertain the appeal because at the time Painters requested an appeal they were unilaterally pursuing the question of entitlement to the "Sta-Smooth" work in a collateral arbitration under a collective bargaining agreement. The Disputes Board held that the Painters, by pursuing collateral arbitration, were in violation of Article III, § 5 of the Plan, which prohibits a union from establishing work jurisdiction on a unilateral basis.
 
 
 6
 Inasmuch as the Disputes Board continued to defer all appeals involving the entitlement to "Sta-Smooth" work, and JAC failed to refer the issue to the Hearings Panel, the Painters initiated this action on August 28, 1975, for a declaratory judgment, specific performance of the 1961 Memorandum, an injunction restraining Plasterers from performing Painters work, and both punitive and compensatory damages. Simultaneously, Painters moved for a preliminary injunction restraining Plasterers from asserting jurisdiction over the taping and pointing of drywall surfaces that were not to receive plaster or acoustical finishes. On November 5, 1975, the district court issued an order denying Painters motion on the ground that the jurisdictional dispute had been certified as a repetitive question and had been referred to the Unions for settlement. Accordingly, the district court directed the parties to petition the JAC to seek referral of the dispute to the Hearings Panel. The court cautioned, however, that the motion for a preliminary injunction could be renewed upon a showing that Plasterers were not cooperating in resolving the dispute through the Plan. In January 1976, after petitioning the JAC for an immediate referral of the jurisdictional question, Painters renewed their motion for the court to issue a preliminary injunction. The district court, finding that it was likely that the 1961 Memorandum was controlling and that Painters would prevail on the merits, granted the motion, and thereby restrained the Plasterers, regardless of the material used, from performing drywall taping and pointing work on surfaces that were not to receive plaster or acoustical finishes. This court affirmed the issuance of the preliminary injunction although deeming it appropriate to limit it to the geographical area of Local 1974 only. Drywall Tapers and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' International Association, 537 F.2d 669 (2d Cir. 1976).
 
 
 7
 On February 1, 1977, the Hearings Panel conducted a preliminary hearing; and further hearings on the merits were scheduled for June 29 and 30. The Panel issued its decision on March 1, 1978. It held that, despite the contentions of both parties, there was no inconsistency between the 1947 decision of record and the 1961 Memorandum, concluding that the 1961 Memorandum was an attempt to clarify, in light of technological changes in the industry, the proper definition of work established by the 1947 decision of record. The Panel also concluded that its decision on the merits of the dispute had rendered moot all the controversies which had arisen out of past assignments and had granted full relief for all claims past and present of persons affected by the controversy.[2]
 
 
 8
 Shortly after the Hearings Panel handed down its decision, the Plasterers moved in the district court to dismiss the complaint and to dissolve the preliminary injunction which had been entered there, on the ground that the Panel's decision completely resolved the controversy in court. Claiming that as a Panel decision may give prospective relief only, and may neither grant relief for past violations nor deny persons adversely affected by violations, the right to pursue judicial relief, Painters argued in opposition to the motion that the portion of the Panel's decision which purported to dispose of all claims was in excess of its authority. Painters also argued that no specific job dispute or claim had been submitted to the Panel. The district court rejected Painters argument, stating that it was "clearly contrary to the Constitution and Plan." The court, holding that there was no reason to continue the lawsuit inasmuch as the Hearings Panel, by virtue of Article X[3] of the Constitution of the Department, clearly had the authority to dispose of the dispute and to resolve the issue of the applicability of the 1961 Memorandum as well as the issue of whether a certain construction process was a job for painters or plasterers, granted Plasterers motions. Similarly, the court found that Article VIII, § 2[4] of the Plan, established pursuant to the constitution, made it clear that the Plan is the exclusive method for resolution of jurisdictional disputes. Article X of the Plan establishes that any decision by a Hearings Panel convened under the Plan must be immediately accepted and complied with by all parties to the Plan.
 
 
 9
 We find that, notwithstanding the long delays and the maladministration of the Plan, the national policy expressed by Congress in enacting the National Labor Relations Act (29 U.S.C. § 173(d)) favoring the resolution of jurisdictional disputes by submission of them to arbitration mandates our acceptance and affirmance of the Hearings Panel decision here. In so doing we are not unmindful of our obligation to give "meaningful" judicial review to the questions of whether an arbitral panel exceeded its authority; United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564,80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (Steelworkers Trilogy); but we also note that the function of the court is very limited when the parties, as in the present controversy, have agreed to submit questions of contract interpretation to an arbitrator or Hearings Panel, as the case may be. Steelworkers Trilogy, Supra. As we have previously stated, ". . . courts must uphold the arbitrator in the exercise of the broadest jurisdiction in the absence of specific contractual limitations on that jurisdiction . . ." Local 453, International Union of Electrical, Radio & Machine Workers, AFL-CIO v. Otis Elevator Co., 314 F.2d 25, 28 (2d Cir.), Cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963).
 
 
 10
 Therefore, arbitral bodies or Hearings Panels, when attempting to do justice and to reach workable solutions, do not A fortiori exceed their authority because they take cognizance of relevant issues beyond those presented by the parties. Sheet Metal Workers' International Union, AFL-CIO, Local Union 17 v. Aetna Steel Products Corp., 359 F.2d 1 (1st Cir.), Cert. denied, 385 U.S. 839, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966).
 
 
 11
 In view of JAC's interpretation of the Plan as to the exclusivity of its procedures for the resolution of jurisdictional disputes, and the authority of the Hearings Panel, we adhere to the view articulated in English v. Cunningham, 108 U.S.App.D.C. 365, 367, 282 F.2d 848, 850 (1960), that "courts will accept the correctness of an interpretation fairly placed on union rules by the union's authorized officials." See also Local Union No. 657 of the United Brotherhood of Carpenters and Joiners of America of Sheboygan County v. Sidell, 552 F.2d 1250 (7th Cir.), Cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); Vestal v. Hoffa, 451 F.2d 706, 709 (6th Cir. 1971), Cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972).
 
 
 12
 The decision of the district court dismissing the complaint and dissolving the preliminary injunction is hereby AFFIRMED.
 
 
 
 [1]
 The 1947 decision of record is reported in the Green Book, Plan for Settlement of Jurisdictional Disputes in the Construction Industry, at pp. 144-45. The decision states in pertinent part:
 When plaster material is used to do pointing and filling it shall be the work of members of the Operative Plasterers and Cement Finishers International Association . . .
 When adhesive materials are used it shall be the work of members of the Brotherhood of Painters . . .
 
 
 [2]
 The Hearings Panel decision on the pointing and taping of drywall held:
 (1) All pointing and taping, regardless of material used, is painters' work, provided the drywall surfaces are not to receive plaster, acoustical or imitation acoustical finishes.
 (2) Pointing and taping, regardless of material used, of drywall surfaces which are to receive plaster, acoustical or imitation acoustical finishes shall be the work of plasterers.
 (3) The surface produced by the application of the same plaster pointing material as used in the pointing and taping of the joints to the entire drywall surface for the purpose of producing a uniform surface compatible with the pointed and taped joints shall be considered a plaster finish, and the pointing and taping in connection therewith shall be the work of plasterers.
 The Hearings Panel further stated in its decision that:
 This decision, now supersedes and renders moot all controversies arising out of past assignments, and this decision contains full and final relief for all claims, both past and present, of all persons affected by this controversy and no further relief whatsoever is warranted.
 
 
 [3]
 Article X of the Constitution of the Building and Construction Trades Department, AFL-CIO, is entitled "Jurisdictional Disputes." It reads as follows:
 All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and employers shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department, or any other plan or method of procedure adopted in the future by the Department for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated National or International Unions and their affiliated Local Unions. (emphasis supplied)
 
 
 [4]
 The Plan for the Settlement of Jurisdictional Disputes in the Construction Industry, Article VII, § 2(a) and (h), states:
 (a) The Department and each of its affiliated Unions agree that all cases, disputes or controversies involving jurisdictional disputes and assignments of work arising hereunder shall be resolved as provided herein and shall comply with the decisions and awards of the Board, or Hearings Panel established hereunder.
 (h) It is further agreed that, if the parties hereto comply with all of the provisions of this Agreement relating to Article VIII, they shall be relieved of all other liability arising therefrom . . .