LOCAL 334, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, a unincorporated association

United Association, Local 49, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, United Association, Locals 523, 124, and 84, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Intervenors,

v.

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO United Association, Local 14 and United Association, Local 274.

Appeal of LOCAL 334, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF The PLUMBING AND PIPE FITTING INDUSTRY OF The UNITED STATES AND CANADA.

No. 79–2407.

United States Court of Appeals, Third Circuit.

Argued May 20, 1980.

Decided Aug. 4, 1980.

James R. Zazzali (argued), Francis J. Vernoia, Zazzali, Zazzali & Whipple, P. A., Newark, N. J., for appellant Local 334.

Timothy R. Hott, Friedland & Friedland, Jersey City, N. J., for Locals 274 & 14.

Richard C. Cooper, Robert S. Scavone, McCarter & English, Newark, N. J., and Donald J. Capuano, Robert Matisoff (argued), O'Donoghue & O'Donoghue, Washington, D. C., for United Association of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, et al.

Albert S. Parsonnet, Parsonnet, Duggan & Pykon, Newark, N. J., for Plumbers Local 49.

Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

On this appeal Local 334 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (Local 334) challenges a consolidation order issued by its parent international union, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (the international). Local 334 alleges that the order violated the international's constitution. Having raised, *sua sponte*, the question of subject matter jurisdiction, we requested that the parties submit supplemental briefs on this matter and address the issue at oral argument. After reviewing the various contentions, we conclude that the district court lacked subject matter jurisdiction. Accordingly, we will vacate the judgment of the district court and remand to the district court with instructions to remand the case to the state court.[1]

### I.

Local 334, composed of both plumbers and pipefitters, represented employees in Morris County, New Jersey. It was affiliated with the international, a labor organization with approximately 550 affiliated local unions and 335,000 members. Prior to 1977 in New Jersey there were 27 locals affiliated with the international. In 1976 and 1977 the international urged the locals to consolidate voluntarily. When the locals could not agree on a voluntary consolidation plan, the international, in January 1977, proposed a plan consolidating the nine locals in northern New Jersey into two locals, one representing all the plumbers and one representing all the pipefitters.[2] The affected locals did not agree to the international's proposed plan and took the position that the status quo should be maintained. On August 4, 1977, the international issued an order of consolidation. In accordance with the previously proposed plan, the plumber members of Local 334 became members of Plumbers Local 14; the pipefit-

---

1. The suit was originally filed in state court, and then removed by the international to federal district court.

2. A third local, composed of metal trades members employed by the New Jersey Public Service Electric and Gas Company, was also established. None of these individuals had been members of Local 334.

ter members of Local 334 became members of Pipefitters Local 274.[3]

Local 334 sent a letter to the general executive board of the international requesting a stay of the order pending appeal. When no response to this request was received, Local 334 filed suit on August 22, 1977, against the international in the Superior Court of New Jersey, seeking to enjoin the enforcement of the order of consolidation. The defendant international removed the case to the United States District Court for the District of New Jersey on August 26. On September 16, Local 334 filed a motion to remand the action to state court. This motion was denied. The district court proceeded to a consideration of the merits. Local 334 and the international each filed motions for summary judgment. On August 20, 1979, the court entered an order dismissing the suit for failure to exhaust internal union remedies and, in the alternative, granting summary judgment in favor of the international and against Local 334. Local 334 filed a timely appeal.

## II.

■ In every appeal presented to it, this court is required to test the presence of subject matter jurisdiction. *Medlin v. Boeing Vertol Company*, 620 F.2d 957 at 960 (3d Cir. 1980); *Pharmadyne Laboratories, Inc. v. Kennedy*, 596 F.2d 568, 570 n. 3 (3d Cir. 1979); *In re Trimble Company*, 479 F.2d 103, 110 (3d Cir. 1973). "To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them." *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 18, 71

S.Ct. 534, 542, 95 L.Ed. 702 (1951). Accordingly, it is our duty to examine this challenge by a local affiliate to the international union's interpretation of the international constitution to determine whether this suit is cognizable in federal court.

The defendant international asserts that there is federal jurisdiction over this suit and over any other action between two labor organizations in which a violation of the union constitution is alleged.[4] It relies on § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) (1976). This statute provides:

> "*Suits for violation of contracts* between an employer and a labor organization representing employees in an industry affecting commerce . . . or *between any such labor organizations*, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis supplied.)

Asserting that "the very purpose [of § 301(a)] is to provide a federal forum for labor contracts,"[5] the defendant urges an expansive view of the jurisdictional grant embodied in § 301(a). It argues that "the union constitution creates a contractual relationship between the plaintiff local (and other locals) and the national union."[6] It contends that the union constitution itself is a contract between labor organizations. Therefore, according to this reasoning, a suit by a local or other subordinate labor group challenging the international's interpretation of the union constitution presents a federal question under 29 U.S.C. § 185(a), *supra.*

Local 334 disagrees with this view. It emphasizes that the federal courts have traditionally been very reluctant to intervene

---

3. After the consolidation, Plumbers Local 14 consisted of its own former members plus the plumbers who had been members of Locals 49, 84, 124, 326, 334, and 523, and Pipefitters Local 274 consisted of its own former members plus the pipefitters who had been members of Locals 49, 334, 523, and 765.

4. Defendant's Supplemental Brief (May 29, 1980) at 2.

5. *Id.* at 6.

6. *Id.* at 2.

in the internal affairs of unions. *Lewis v. American Federation of State, County and Municipal Employees*, 407 F.2d 1185, 1192 (3d Cir.), *cert. denied*, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969); *Drywall Tapers and Pointers v. Operative Plasterers' and Cement Masons' International Association*, 601 F.2d 675, 679 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379, 1388–89 (9th Cir. 1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *United Brotherhood of Carpenters & Joiners v. Sidell*, 552 F.2d 1250, 1255 (7th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *Smith v. United Mine Workers*, 493 F.2d 1241, 1242–44 (10th Cir. 1974); *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); *English v. Cunningham*, 108 U.S.App.D.C. 365, 282 F.2d 848, 850 (D.C. Cir. 1960). *Cf. Howard v. United Association of Journeymen and Apprentices of Plumbing & Pipefitting Industry*, 560 F.2d 17, 21 (1st Cir. 1977); *Smith v. Local No. 25, Sheet Metal Workers International Association*, 500 F.2d 741 (5th Cir. 1974). It notes that the Supreme Court, although holding that the reference to "contracts" in § 301(a) encompasses more than collective bargaining agreements,[7] has never ruled that a labor union's constitution is a contract within the meaning of § 301(a). Further it contends that there is no support in the legislative history for the defendant's assertion that federal district courts have subject matter jurisdiction in all suits in which there is a dispute concerning a union constitution.

The controversy thus is a limited one. The parties take opposing views of the scope of the jurisdictional grant embodied in § 301(a). In order to resolve this dispute, we must attempt to determine the intent of Congress in providing jurisdiction over "suits for violation of contracts between an employer and labor organization . . . or between any such labor organizations," 29 U.S.C. § 185(a). The legislative history of this statute reveals that Congress explicitly intended that collective bargaining agreements be the prime subject of the "contracts between an employer and a labor organization" clause.[8] In *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), the Supreme Court held that this clause also encompassed more than collective bargaining agreements. It ruled that a strike settlement agreement is a contract intended to be actionable in federal court under § 301(a), stating:

"It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them. It came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute. Its terms affect the working conditions of the employees or both respondents. It effected the end of picketing and resort by the labor organizations to other economic weapons, and restored strikers to their jobs. It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a)."

*Id.* at 28, 82 S.Ct. at 548.

Legislative history, however, does not elucidate the "contracts . . . between . . . labor organizations" clause. Because the clause was not introduced until the House-Senate conference, there are no references to the clause in congressional debates or reports.[9] Nor did the conference committee provide any explanation of this addition.[10] Consequently, we must turn to

---

7. *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 26, 82 S.Ct. 541, 547, 7 L.Ed.2d 503 (1962).

8. 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 421–24 (1948).

9. 2 *id.* at 1526–1535, 1543 (1948).

10. *Id. See* Note, *Applying the "Contracts Between Labor Organizations" clause of Taft-Hartley Section 301: A Plea For Restraint*, 69 Yale L.J. 299, 301 n. 18 (1959).

decisional law for aid in interpreting the contracts-between-labor-organizations clause.

As mentioned earlier, the Supreme Court has not directly addressed this issue.[11] A number of our sister circuits have explored this issue, however, and their holdings provide substantial guidance. In *1199 DC, National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees*, 175 U.S.App. D.C. 70, 533 F.2d 1205 (D.C.Cir.1976), the defendant merged its affiliate in Washington, D.C., with its affiliate in Baltimore, Maryland. One affiliate sued, contending that the merger violated the union constitution. The court stated that the absence of "concrete allegations of actual threats to industrial peace" or of employers being faced with "untenable choices concerning union representation" was fatal to federal jurisdiction. *Id.* at 1208. Finding that the allegations concerning the union constitution revealed only an intra-union conflict, the court dismissed the claims under § 301(a).

Similarly, in *Smith v. United Mine Workers of America*, 493 F.2d 1241 (10th Cir. 1974), the international union ordered several districts to merge.[12] The basis of the suit filed protesting the merger was that the provision of the union constitution authorizing changes in the districts had been violated. The district court found for the plaintiff and enjoined the merger. The appellate court reversed, concluding that although the plaintiff's claim might be meritorious, there was no jurisdiction under § 301(a) to consider it. Believing that Congress was reluctant to have the federal courts intervene in every dispute between a parent and a local over the meaning of the union constitution, the court said:

> "If Congress intended to turn over to the federal courts the control and supervision of internal union affairs which have no external application to industrial peace or to collective bargaining agreements we believe that Congress would have said so explicitly. We agree . . . that it was not the intent of Congress for the courts to use the LMRA to police intra-union problems. . . . It follows that § 301(a) does not confer federal jurisdiction over the case before us."
>
> (Citation omitted.)

*Id.* at 1243–44.

In contrast to. *1199 DC* and *Smith*, the Seventh Circuit in *Local Union No. 657, United Brotherhood of Carpenters and Joiners v. Sidell*, 552 F.2d 1250 (7th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977), held that there was § 301(a) jurisdiction over a complaint that the parent union had violated its constitution in ordering a local to affiliate with a certain district council. The court, however, adopted the holding of *1199 DC* that there must be more than "mere intra-union organizational change involved" in order for § 301(a) jurisdiction to exist. *Id.*, 552

---

11. The Court in *Retail Clerks* did, however, cite approvingly *United Textile Workers v. Textile Workers Union*, 258 F.2d 743 (7th Cir. 1958), in which a federal court found jurisdiction under § 301(a) to enforce a no-raiding agreement between two international unions. The no-raiding agreement was deemed a contract between two labor organizations and held to fall within the scope of § 301(a). A suit based on a no-raiding agreement between two internationals is quite different from a suit based on one local's challenge to its international's interpretation of the union constitution, however. Violation of a no-raiding agreement between two internationals raises the specter of an industry-wide dispute. Such a dispute might well lead to disruption throughout large portions of the industry, creating problems for many employers. The problem of jurisdictional strikes was widely discussed by Congress during consideration of the Labor-Management Relations Act. *See* 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 414, 615; 2 *id.* at 950–51, 995–97, 1056, 1654. No such attention was focused on the possibility of a local union challenging the international's interpretation of the union constitution, a situation less likely to have significant effects on employers. Thus, we must turn to another line of cases in order to resolve the specific jurisdictional question before us.

12. This union had a three level structure. The districts, which compromise the intermediate level, are composed of a number of locals. *Smith v. UMW*, 493 F.2d 1241, 1241–42 (10th Cir. 1974).

F.2d at 1255. The court examined the pleadings and found that the plaintiff had alleged facts showing that the order in issue posed serious dilemmas concerning union representation for employers. In light of the specific factual allegations that the affiliation order would have a major impact on labor-management relations, the court concluded that § 301(a) jurisdiction was present.[13]

The First Circuit reached a conclusion similar to that in *Sidell* in *Local Union 1219, United Brotherhood of Carpenters and Joiners v. United Brotherhood of Carpenters and Joiners*, 493 F.2d 93 (1974). There a bitter dispute between two locals erupted when the international granted a charter to represent millwrights to a new local. The carpenter locals, which had previously represented millwrights, refused to cease bargaining for millwrights. The president of the international did not provide interstate contractors with the necessary authorization to hire millwrights through the new local rather than the carpenter locals. Consequently, these employers were unable to determine with which union representatives they should bargain. The court examined the allegations to determine whether "exercising jurisdiction . . . [would] involve the courts in regulating internal union matters which Congress did not intend to control." *Id.* at 96. Concluding that the suit arising out of this particular factual situation involved more than solely intra-

union concerns, the court ruled that federal jurisdiction under § 301(a) was present.

The most recent appellate decision on point, *Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379 (9th Cir. 1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979), synthesized the cases discussed above. In *Stelling*, the court was presented with a claim that the international union had violated the international's constitution by failing to submit a bargaining agreement to the union membership for a ratification vote. The court held that there was no jurisdiction under § 301(a) because the challenge to the union constitution concerned an "intra-union issue that does not affect labor-management relations." *Id.* at 1384. The touchstone of the *Stelling* court's analysis was the Supreme Court's statement in *Retail Clerks* that § 301(a) applies to suits based on contracts "significant to the maintenance of labor peace." 369 U.S. at 28, 82 S.Ct. at 548. *Stelling* also discussed the pertinent courts of appeals cases, emphasizing that other courts, in attempting to ascertain whether § 301(a) jurisdiction existed, also had focused on the existence of a significant impact on labor peace.

"Several courts have permitted actions under § 301 based on asserted violations of a union constitution. However, in each case where a constitution has pro-

---

13. In *Local Union No. 657, Untd. Bthd. of Carpenters and Joiners v. Sidell*, 552 F.2d 1250 (7th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977), the court also considered whether a union constitution is a contract within the meaning of § 301(a). The court decided that a § 301(a) contract might be expressed in a union constitution, a local union charter, or a combination of both. *Id.* at 1253. We need not reach this issue. As the United States Court of Appeals for the District of Columbia Circuit remarked in *1199 DC*, 533 F.2d at 1207–08:

"We need not face the issue whether a union constitution is a § 301(a) contract in this case, however. A factual prerequisite found in [cases where disputes about the interpretation of union constitutions provide jurisdiction under § 301(a)] is not alleged in this matter. . . . [T]here were no concrete allegations of actual threats to industrial peace. Furthermore, at oral argument be-

fore this court the plaintiffs offered no suggestion that employers were forced to make untenable choices concerning union representation. Therefore, the allegations concerning the union constitution reveal only an intra-union conflict.

"Without this factual prerequisite being alleged, we do not meet the issue whether the union constitution is a contract, and we affirm the dismissal of these § 301(a) allegations."

The posture of the instant case is similar to that of *1199 DC*. As explained in more detail in the text, *infra*, the allegations in the complaint reveal only an internal union dispute. Without specific factual allegations which demonstrate that the consolidation order has a significant impact on labor-management relations, the complaint fails to satisfy a threshold requirement of § 301(a) jurisdiction.

vided the basis for jurisdiction, the court has specifically found that the controversy had either 'traumatic industrial and economic repercussions,' *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 916 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (action by local against international for rescission of local's charter), or significantly affected labor-management relations, as where the dispute affected the representation of workers in collective bargaining. *Local Union 1219, United Brotherhood of Carpenters v. United Brotherhood of Carpenters,* 493 F.2d 93, 96 (1st Cir. 1974); *Local Union No. 657 of United Brotherhood of Carpenters v. Sidell,* 552 F.2d 1250, 1256 (7th Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977). *See Keck v. Employees Independent Association,* 387 F.Supp. 241 (E.D.Pa.1974).

"Other courts have ruled that union constitutions do not provide a jurisdictional basis where the underlying controversy was strictly intra-union and unrelated to external labor-management relations. In *1199 DC, National Union of Hospital and Health Care Employees v. Nat'l Union of Hospital and Health Care Employees,* 175 U.S.App.D.C. 70, 533 F.2d 1205 (1976), the union local and individual members sued the parent unions alleging that a merger of locals violated the constitution. The court found no jurisdiction under § 301 because plaintiffs had not asserted any effect on collective bargaining or on relations with employers, therefore the dispute was deemed intra-union. In *Smith v. United Mine Workers,* 493 F.2d 1241 (10th Cir. 1974), union members sued the international contending that the merger of intermediate districts within the union violated the constitution. The 10th Circuit found no jurisdiction

because the dispute was strictly intra-union and stated:

[Section] 301(a) must be liberally applied to promote industrial peace, but that principle has no application here. This controversy relates only to the construction and application of the union constitution and has nothing to do with labor-management relations.

493 F.2d at 1243."

*Id.,* 587 F.2d at 1383. The *Stelling* court concluded that "if a controversy [relates] only to a union dispute which will not affect external labor relations, § 301 does not provide a basis for jurisdiction." *Id.* at 1384. Applying this standard to the record before it, the court ruled that a bald assertion that a certain action would have a major impact on labor-management relations was insufficient. Because the plaintiff failed to allege specific facts describing the impact on external labor relations, his claim was not cognizable under § 301(a). *Id.*

■ This review of the decisional law demonstrates that the courts are uniform in holding that solely intra-union disputes do not present a federal question under § 301(a). We agree with this reasoning and are persuaded by the view that disputes between local and parent unions must involve events which potentially have a significant impact on labor-management relations or industrial peace in order for there to be jurisdiction under § 301(a). In light of these principles, we must examine the record in this case.

### III.

■ The international correctly asserts that in determining whether § 301(a) jurisdiction exists the complaint is the crucial document.[14] It contends that the complaint contains three allegations of facts which

14. The defendant concedes that in its answer it denied the complaint's factual allegations on which it now relies. Defendant's Supplemental Brief (May 29, 1980) at 11. It urges that it not be bound by its pleading, noting that in considering § 301(a) jurisdiction in cases involving challenges to a union's constitution, the courts have focused on the sufficiency of facts alleged.

. We agree that in this case the focus should be on the allegations in the complaint, rather than the denials in the answer. To hold otherwise would allow a defendant to defeat subject matter jurisdiction under § 301(a) in every case involving contracts between labor organizations merely by denying any allegations of external effects.

have significant impact on labor-management relations. First, the defendant argues that plaintiff's charge that consolidation would change the existing system of referral constitutes an allegation of serious adverse impact on labor-management relations. In support of this contention, it relies on paragraph 12 of the original complaint:

"At the present time plaintiffs have the exclusive contractual jurisdiction for all plumbing and pipefitting work in the area of Morris County. As such, Plaintiff refers out its membership without distinction as to whether they bear a plumber membership card or a pipe fitter membership card. The present Order of Consolidation will result in deprivation of work opportunities in that plaintiffs' members will thereafter be required to work under separate referral lists as either plumbers or fitters and through separate local unions."[15]

Although this allegation does assert that the change in referral lists will reduce the work opportunities of members of Local 334, it does not follow that the change will have a significant impact on employer-union relations. The referral lists are an internal union device for assigning work opportunities. The local may agree to provide an employer with workers, and may use a referral list to facilitate that agreement, but the employer has no authority over the manner in which the referral list operates.[16] Such matters lie solely within the discretion of the union.

Second, the defendant argues that the plaintiff protested that the consolidation order terminated Local 334's collective bargaining agreements, thus significantly affecting labor-management relations. Although the order did terminate collective bargaining agreements, it specifically provided that all contractual obligations of Local 334, including existing collective bargaining agreements, were to be assumed and carried out by Locals 14 and 274.[17] Under this directive, any impact on labor-management relations would be minimal. Furthermore, plaintiff did not allege any facts purporting to indicate what impact this change would have.

Third, the defendant argues that the plaintiff alleged that consolidation would adversely affect the pension and welfare benefits of members of Local 334. The international points to the affidavit of William Wibbelt, former business manager of Local 334, who asserted that as a result of the consolidation order the pension and welfare benefits guaranteed to members of Local 334 would be destroyed.[18] This claim, however, misses the mark. Although pension and welfare benefits are the product of collective bargaining, they are essentially autonomous trust funds established under independent trust indentures. They are administered jointly by trustees composed of employers, employees, and neutral persons chosen by representatives of employers and employees. 29 U.S.C. § 186(c)(5)(B) (1976). The fact that a local union ceases to exist does not mean that the trust fund ceases to exist.[19] Nor does it mean that the employer is released from his obligations under the collective bargaining agreement to make

15. App. at 14a.

16. Plaintiff's Supplemental Brief (June 6, 1980) at 12–13.

17. *Id.* at 14.

18. App. at 130a.

19. In fact, although the locals have been consolidated, the status of Local 334's welfare and pension funds has not changed. At this time, almost three years after the order of consolidation, Local 334's welfare and pension funds are still in existence as a separate entity. Plaintiff's Supplemental Brief (June 6, 1980), at 16. Furthermore, at the time of the consolidation, the affected locals were informed that various alternatives regarding the pension and welfare benefits plans were possible. The first alternative contemplated maintaining the individual plans of each local as separate plans with distinct features. Another alternative contemplated merging the plans of each local into the Local 14 plan. Under the second option, beginning with the expiration date of the collective bargaining agreements, employers' contributions for plumbers would be sent to Local 14. Exhibit D to Affidavit of Thomas Brennan, filed November 10, 1977.

pension and welfare contributions. As noted above, the consolidation order explicitly stated that the collective bargaining agreements and other contractual obligations of Local 334 would be carried out by the consolidated local unions. Thus, the fact that it is possible that changes in these trust funds may occur does not constitute a significant impact on labor-management relations.

We conclude that the pleadings in this case do not present concrete allegations of actual impact on employer-union relations. Our examination of the pleadings reveals that dispute over the propriety of the consolidation order concerns an intra-union matter. Therefore, we hold that § 301(a) does not provide federal jurisdiction for this case.[20]

### IV.

To summarize, the intent of Congress in enacting § 301(a) of the Labor Management Relations Act was to grant jurisdiction to the federal courts over suits based on contracts significant to the maintenance of labor peace. Suits concerning intra-union matters that do not have a significant impact on labor-management relations or industrial peace are outside the scope of § 301(a). Thus, a suit by a local union challenging the parent union's interpretation of the union constitution does not, in the absence of specific factual allegations of actions which have a significant impact on labor-management relations or industrial peace, present a federal question under § 301(a). In the instant case the plaintiff, Local 334, contests the defendant international's order of consolidation, asserting that the order violates the union constitution. Although Local 334 alleges that its members will be harmed in some ways as a result of the consolidation, the potential difficulties it alleges will result, even if they occur, would not have a significant impact on labor-management relations or industrial peace. Therefore, this suit, rais-

ing solely intra-union issues, falls outside the ambit of § 301(a). In light of this analysis, we conclude that the district court lacked subject matter jurisdiction over this controversy.

Accordingly, we vacate the judgment of the district court and remand to the district court with instructions to remand the case to the state court from which it was removed.

---

**20.** In light of this holding we necessarily do not reach the merits of this case. Our decision in favor of plaintiff's position on the jurisdictional issue carries no implication that we agree with the plaintiff on the substantive issue.