**TILE, MARBLE, TERRAZZO, FINISH-ERS, SHOP WORKERS, GRANITE CUTTERS INTERNATIONAL UNION, AFL–CIO, Plaintiffs,**

**v.**

**GRANITE CUTTERS AND MARBLE SETTERS AND HANDLERS OF GREATER NEW YORK AND VICINI-TY, LOCAL 106, Rocco Barone, Louis Nappo, Michael Scorcia, Harvey Consor and Anthony Magrone, Defendants.**

**No. 85 CV 3256.**

United States District Court, E.D. New York.

Nov. 20, 1985.

Jubelirer, Pass & Intrieri (Joseph J. Pass, Jr., of counsel), Pittsburgh, Pa., Stephen H. Kahn, New York City, for plaintiffs.

Cohen, Weiss & Simon (Eugene S. Fried-man, Richard M. Seltzer, April D. Harris, of counsel), New York City, for defendants.

### MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The plaintiff in this case is an interna-tional union that seeks an injunction en-

forcing a trusteeship it imposed on the defendant local union. I have read the briefs and affidavits submitted by both sides, and after considering the testimony at the hearing of October 10, 1985, I have reached the following findings of fact and conclusions of law.

### Findings of Fact

1. This Court has jurisdiction over this dispute under section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.

2. The plaintiff, Tile, Marble, Terrazzo, Finishers, Shop Workers, Granite Cutters International Union, AFL–CIO ("the International"), is an unincorporated labor organization and was at least at one point the parent organization of the defendant.

3. Defendant Granite Cutters and Marble Setters and Handlers of Greater New York and Vicinity, Local 106 ("Local 106") is a labor union which represented employees in the craft of cemetery monument cutters and setters in the New York metropolitan area. The following officers of Local 106 are also defendants in this action: Louis Nappo, President; Rocco Barone, Treasurer; Michael Scorcia, Vice President; Harvey Consor, Recording Secretary; and Anthony Magrone, Business Agent. The defendant Local contends that it voted in March 1984 to disaffiliate from the plaintiff International, and that on August 2, 1985 its members voted to merge into Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 282").

4. The defendant Local claims that it notified the International of the 1984 disaffiliation vote in March of that year. The International contends that it did not receive that notification, and did not see a copy of the letter dated March 16, 1984 until July 8, 1985.

5. The parties agree that in April 1984, Local 106 ceased paying per capita taxes to the International. The per capita tax must be paid in order for the Local members to be eligible for death benefits provided by the International Union. The Local con-tends that when it submitted this final payment, which covered the period through February 1984, it again informed the International of Local 106's decision to disaffiliate.

6. During the spring of 1985, the leadership of Local 106 met several times with Robert A. Sasso, President of Teamsters Local 282. The International learned of the Local's desire to become affiliated with Local 282. On July 16, 1985, the plaintiff International placed the defendant Local under a temporary trusteeship. The letter from the president of the International cited three reasons for imposing the trusteeship. It alleged that Local 106 had failed to pay per capita taxes since February 1984. It further alleged that the Local had not answered the International's letter of April 22, 1985, which had requested information about the collective bargaining agreements of the Local. Finally, the International asserted that on July 8, 1985 it had received Local 106's notification dated March 16, 1984 that the Local membership had voted to disaffiliate from the International.

7. Plaintiff contended at the hearing and in its memorandum filed the day before the hearing that the trusteeship was imposed not to *prevent* the disaffiliation, but rather to ensure that the members were fully informed about the pros and cons of disaffiliation before voting on the proposed merger with Teamsters Local 282. I find, however, that this is merely an after-the-fact rationalization for the International's action. In various documents discussing the trusteeship—including the letter imposing it, other letters sent to various union personnel, the LM–15 form submitted to the Department of Labor, and the initial brief filed in this Court—not once did the International mention this concern with the democracy of union procedures. I find that the third reason for the imposition of the trusteeship was in fact to prevent disaffiliation, and that the concern with disseminating information to the members before the vote is, as defendants phrase it, a "liti-

gation-related afterthought." Defendant's Post-Hearing Memorandum at 3.

8. Article VII of the International constitution governs the imposition of trusteeships on locals. It provides that the General President

> may file charges against any officer or member with the General Executive Council for hearing, or appoint a temporary trustee to take charge and control of the affairs of such subordinate body provided, however, that prior to the appointment of such trustee he shall cause to be issued a notice setting a time and place for hearing for the purpose of determining whether such temporary trustee shall be appointed, but provided further, however, that where in the judgment of the General President, Secretary —Treasurer, an emergency situation exists within the subordinate body, a temporary trustee may be appointed prior to such hearing, but such hearing shall then commence within 30 days and a decision made within 60 days after the appointment of such temporary trustee.

The International notified the members of Local 106 by a letter dated July 29, 1985 that a hearing would be held on August 13, 1985. The notice stated that the hearing would be held at 7902 Metropolitan Avenue, Middle Village, Queens, at 8:00 p.m. All interested parties were invited to participate. The International alleges that this hearing took place on August 13, 1985 and that the Hearing Officer subsequently recommended that the trusteeship be continued in accordance with the union constitution and by-laws.

9. Meanwhile, the leadership of Local 106 decided to have a secret ballot election. This appears to have been motivated by the Local's doubts about the validity of the March 1984 vote to disaffiliate. It appears that National Labor Relations Board procedures were not followed at that time; in any case, the Local had continued to do business with the International. Thus, on the advice of counsel, the Local resubmitted the disaffiliation question to its membership. The election was held on August 2, 1985, about two weeks after the imposition of the trusteeship. Over eighty percent of the members voted to leave the plaintiff International and merge with Teamsters Local 282.

10. The president of the Local notified the president of the International of the election and its results by letter dated August 5, 1985. He stated in his letter that the International could have the books, records, and property of the Local, and whatever per capita assessments were claimed as due, if the International was willing to abide by the wishes of the employees to merge into Teamsters Local 282.

11. On August 24, 1985 the Local opened a bank account in which it deposited certain funds to be held in trust for the plaintiff International. The amount placed in the account was the amount of per capita tax assessments that would have accrued between March 1984 and August 1985.

12. Plaintiff International now seeks a preliminary injunction directing the defendant Local to turn over all funds, books, records, papers and other assets of the Local to the Trustee appointed by the International and to cease interfering with the Trustee's administration of Local 106.

### Conclusions of Law

1. Any discussion of the validity of a trusteeship must start with the Labor-Management Reporting and Disclosure Act ("LMRDA"). At 29 U.S.C. § 462, it provides:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization.

Thus § 462 prescribes the proper method for imposing a trusteeship and the proper reasons for doing so. The inquiry does not end there, however. 29 U.S.C. § 464(c) states, in pertinent part, that

[in] any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing ... shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

Thus, if the trusteeship was imposed in conformity with the International's constitution, it is presumed to be valid absent clear and convincing evidence that the International did not act in good faith for a proper purpose.

2. The Second Circuit has made clear, in *National Association of Letter Carriers, AFL–CIO v. Sombrotto*, 449 F.2d 915 (1971), that Congress' decision to afford the trusteeship a presumption of validity means that the ordinary standard for a preliminary injunction must be modified in this context. Ordinarily a preliminary injunction will issue only

where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Application of this standard to the trusteeship situation, however, would place the burden on the plaintiff International, when the statute clearly states that the burden should be on the defendant Local to prove invalidity by clear and convincing evidence. The Second Circuit has concluded, therefore, that the parent union "is entitled to a preliminary injunction imposing a trusteeship on application unless the local comes forward with adequate proof that the trusteeship is not being sought in good faith." *Sombrotto, supra*, 449 F.2d at 921.

3. All this presumes, however, that the trusteeship was imposed in conformity with the International's constitution. If this procedural regularity is absent, the presumption of validity does not arise. *See* 29 U.S.C. § 464(c).

4. As noted earlier, the International's constitution requires that in an ordinary situation, a hearing is to take place prior to the appointment of the trustee. If the General President or Secretary-Treasurer determines that an emergency situation exists, however, the trusteeship may be imposed before the hearing, as long as the hearing takes place within thirty days and a decision is rendered within sixty days. No prior hearing was held in this case, so presumably the International was relying on the emergency provision.

5. "Where 'emergency circumstances' are relied upon to justify the imposition of a trusteeship without a prior fair hearing, the courts will look behind the parent organization's decision to determine whether there actually were 'emergency' circumstances."[1] T. Kheel, *Labor Law* § 45.-

---

**1.** This presents an apparent conflict. The trusteeship is proper only if it is imposed in accordance with the union's constitutional procedures. Where the parent organization relies on a provision allowing pre-hearing imposition of a trusteeship in an emergency situation, the procedural regularity of the imposition depends on whether the plaintiffs had a good faith belief that an emergency existed. *Retail, Wholesale, Department Store Union, AFL–CIO–CLC v. National Union of Hospital and Health Care Employees*, 577 F.Supp. 29, 32 (S.D.N.Y.1984). It

could be argued that the Second Circuit's mandate that the burden be on the defendant to prove the parent's bad faith in imposing the trusteeship means that the plaintiff is entitled to the presumption of good faith on the issue of the existence of an emergency as well.

Judge Sand of the Southern District of New York faced this problem in *Retail, Wholesale, supra*. That situation was complicated by the fact that a preliminary injunction hearing and a trial on the merits were combined. Judge Sand

04[2], at 45–33; *see Retail Clerks Union, Local 770 v. Retail Clerks International Association*, 479 F.2d 54 (9th Cir.1973); *Local Union 13410, United Mine Workers of America v. United Mine Workers of America*, 475 F.2d 906 (D.C.Cir.1973).

6. This brings us back to the International's three reasons for imposing the trusteeship: the local's failure to pay the per capita tax, its failure to provide information about collective bargaining, and its impending affiliation with Teamsters Local 282. I shall address each in turn.

### a. *Failure to pay the per capita tax*

■ As Judge Sand pointed out in *Retail, Wholesale, Department Store Union, AFL–CIO–CLC v. National Union of Hosp. & Health Care Employees*, 577 F.Supp. 29, 32 (S.D.N.Y.1984), the word "emergency" "connotes a situation 'developing suddenly and unexpectedly and demanding immediate action.'" *Id.* at 33 (quoting *American Heritage Dictionary*). In the instant case Local 106 has not paid per capita assessments to the International since April 1984, and any effect of that non-payment on death benefits of Local 106 members has existed for the same period of time. Thus, this hardly presented an emergency in July 1985.

### b. *Failure to provide information about collective bargaining agreements*

■ Although assuring the performance of collective bargaining agreements is a

legitimate object of a trusteeship, *see* 29 U.S.C. § 462, the withholding of information by the Local does not necessarily constitute an emergency. In its trusteeship report to the NLRB, the International reports that the last contract of which it was aware had expired in April 1984 and that the Local had not informed it of the signing of any new contract. The International did not make any request in writing, however, until April 1985, a year later.[2] Thus, in the absence of any evidence suggesting that the Local abdicated its responsibility as bargaining agent for its members, I conclude that the Local's withholding of the information did not constitute an emergency in July 1985.

### c. *The Local's affiliation with Local 282*

■ Whether the Local's impending merger with Local 282 constituted an emergency justifying a pre-hearing trusteeship is a slightly more complicated question. Although the Second Circuit has found that prevention of disaffiliation can be a legitimate reason for imposing a trusteeship, *see Executive Board Local 1302, United Bhd. of Carpenters and Joiners of America v. United Brotherhood of Carpenters and Joiners of America*, 477 F.2d 612 (2d Cir.1973); *National Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir. 1971), I am persuaded by the defendant's effort to distinguish those cases from the situation here. The cases cited by plaintiff

---

solved the problem by holding that even if the burden were on the defendants, they had met it in that case. The facts in this case are less clear, so I must proceed to determine whether the presumption of validity applies to the International's determination that an emergency existed.

The pieces fall into place fairly easily when one remembers that the Second Circuit shifted the burden to the defendant in order to effectuate the statutory presumption. That presumption only arises *if* it is determined that the trusteeship has been imposed properly. It logically cannot apply to the decision *whether* the trusteeship has been imposed properly. Any other result would allow the parent organization to bootstrap its trusteeship into a presumption of validity: it could invoke the presumption to support its contention that the presumption

ought to arise. In other words, while as a general proposition deference should be given a union's interpretation of its own rules, *see Drywall Tapers & Painters of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' Int'l Ass'n*, 601 F.2d 675, 679 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980), I conclude that the Court has the discretion to determine independently the existence of an emergency justifying the imposition of a trusteeship prior to a hearing. *See* T. Kheel, *supra*, § 45.04[2]; *Retail Clerks, supra*, 479 F.2d at 55; *Local Union 13410, supra*, 475 F.2d at 914–15.

2. The Local says that it did not turn over any contracts because the new contracts were not yet signed when the International requested them.

involved attempts by locals to remain in their internationals and to withdraw from multi-union bargaining units, actions which directly affect the collective bargaining relationship. The Court allowed those trusteeships in order to prevent adverse affects on collective bargaining obligations.

Here, however, the Local—which was and intended to remain the local bargaining unit—was attempting to break off from the International. This action would not affect any bargaining responsibilities of the International or any other entity, because those responsibilities were at all times in the hands of the Local. This is simply not a situation where a local attempts to withdraw from a bargaining unit and is disciplined by a parent with whom it wants to remain affiliated.

Plaintiff argues, however, that the threat of disaffiliation can constitute an emergency even in the absence of an immediate threat to the bargaining unit. It points to *C.A.P.E. Local Union 1983, IBPAT, AFL-CIO, of Cape May County, N.J. v. International Bhd. of Painters & Allied Trades*, 598 F.Supp. 1056 (D.N.J.1984), as support for that contention. The Court in that case stated that while "disaffiliation, in and of itself, is [not] a sufficient ground for a *continuing* trusteeship, ... the threat of imminent disaffiliation, when combined with other possible problems within the Local, suffices for the imposition of a temporary trusteeship." *Id.* at 1069–70 (emphasis in original).

In that case, however, there were several "other problems" not present here, including an alleged breach of fiduciary duty by local officers, a possibly illegal change in the bargaining agent, and a genuine concern—reflected in the LM–15 form submitted by the international involved in that case—that the members making the disaffiliation decision were not receiving sufficient information.

Here there is no allegation of corruption on the part of the Local officers, the International had never been involved with collective bargaining, and, as noted above, any concern about democratic procedures within the Local "appears more as an afterthought justifying abrupt and arbitrary action taken." *Local Union 13410, United Mine Workers of America v. United Mine Workers of America*, 475 F.2d 906, 913 (D.C.Cir.1973). Accordingly, I find that in this case, the imminent disaffiliation of Local 106 did not constitute an emergency warranting imposition of a trusteeship without a hearing.[3]

7. I thus conclude that there was no emergency justifying the imposition of a trusteeship prior to a hearing. Because this means that the trusteeship was not imposed in conformity with the International's own Constitution, the presumption of validity does not arise. It may also be that, in the absence of an emergency, the failure to hold a pre-imposition hearing means that the trusteeship is void from its inception. That was the view of the District of Columbia Circuit in *Local 13410, United Mine Workers of America v. United Mine Workers of America, supra*, 475 F.2d at 915.

The Second Circuit has not had occasion to go as far. In *Sombrotto, supra*, 449 F.2d at 920, the Court held that post-hoc ratification is permissible under the LMRDA if the union's constitution or bylaws provide for that procedure. There, however, the Court presumed the existence of the factual predicate for the invocation of such a provision. It did not state what the effect on the trusteeship would be if

---

3. I should add at this point that the Local contends that the International constitution provides for automatic suspension of a local that fails to pay its per capita tax for three months. If the local does not apply for reinstatement within 30 days, the local's charter is to be recalled. The Local argues that the revocation of the charter is also automatic and that because the Local was technically disaffiliated as of Au-

gust 1984 because of its failure to pay the per capita tax, the threat of disaffiliation in July 1985 can hardly be viewed as an emergency. The Local also argues that this automatic disaffiliation means that the Local is not a "subordinate body" over which the International can impose a trusteeship. I need not address these issues today.

the constitution contained a provision for pre-hearing imposition in an emergency, but the "emergency trusteeship" at issue was imposed when there was in fact no emergency. Presumably, however, the Second Circuit would agree with the District of Columbia Circuit that in such circumstances a trusteeship imposed without a hearing is void.

█ I need not decide that issue today, however, because even if the trusteeship is not void as a matter of law, the plaintiff has not carried the burden it must meet in order to obtain a preliminary injunction. Thus, even if we assume that the absence of an emergency does not void the trusteeship altogether, it at least means that the trusteeship was not imposed in conformity with the International's own constitution. This in turn means at minimum that the presumption of validity does not arise. Accordingly, whether the trusteeship is to be enforced is to be determined according to the ordinary standards governing the issuance of preliminary injunctions.

8. The plaintiff has failed to establish the possibility of irreparable harm if the injunction is denied. The Local has always functioned as bargaining agent without participation by the International, and since June 1985 it has signed seventeen collective bargaining agreements.[4] The International has not demonstrated what harm could come from allowing the Local to continue to do so. Nor has the plaintiff raised any other potential hardships. The claimed per capita assessments are safely in escrow, and there is no indication that the Local officers are behaving improperly in any other respect. I therefore conclude that there is no risk of irreparable harm if the Local is allowed to continue to function without the supervision of the International. The motion for a preliminary injunction is denied.

SO ORDERED.

4. It emerged at the hearing that some of these contracts are with employers who are themselves members of the union. This seems to be rather irregular, but that issue, and the matter

of the validity of the disaffiliation elections, appear to be better left to the National Labor Relations Board.