848 F.2d 709
 128 L.R.R.M. (BNA) 2544, 109 Lab.Cas. P 10,522
 TEAMSTERS LOCAL UNION NO. 406, a labor union chartered by
the International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America; Phil Viviano; Tom
Dertien; George Dean; Joe Hagen; and Char Horn,
Plaintiffs-Appellees,
v.
Mark CRANE; et al., Defendants,
Jackie Presser and the International Brotherhood of
Teamsters, Defendants-Appellants.
 No. 86-1805.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 17, 1987.
Decided June 3, 1988.
 
 Gary S. Witlen (argued), Washington, D.C., for defendants-appellants.
 Grant J. Gruel, Gruel, Mills, Nims and Pylman, Patrick J. Devlin, Thomas R. Behm (argued), Grand Rapids, Mich., for plaintiffs-appellees.
 Before MARTIN and GUY, Circuit Judges, and JOHNSTONE,* Chief District Judge.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 The International Brotherhood of Teamsters, "the international union," appeals the district court's decision that the international union had imposed an unlawful trusteeship over Teamsters Local Union No. 406, "the union local." The international union also challenges the court's order requiring it to pay the costs and expenses of an election to select new officers of the union local. Because we believe the district court erred in its choice and application of law, we reverse.
 
 
 2
 This dispute has its origins in 1984 when the union local conducted a regularly-scheduled election of officers. Mark Crane, Philip Viviano, and four others ran as a slate of officers. All six were elected to the seven-member executive board. Crane was elected as the Secretary-Treasurer, the principal executive officer. As such, he became a full-time employee of the union local. Evidently, Viviano, who had prior experience as an officer, chose not to challenge Crane for that position; in exchange, Crane promised that, if elected, he would hire Viviano as a business agent to run the union local. After the election, Crane fulfilled his end of the bargain.
 
 
 3
 Initially, Crane and Viviano ran the union local in harmony; in fact, contrary to the union local's bylaws, Crane permitted Viviano to supervise the activities of the appointed business agents.
 
 
 4
 Crane and Viviano's cooperative relationship soon deteriorated, however, as the proposed sharing of authority led to disputes as to how the union local should be run. Over the course of several months, Crane and Viviano clashed over several issues: salaries for themselves and other employees; the interpretation of bylaws; declining membership; excessive attorneys fees; and, most frequently, the steadily-declining financial situation of the union local.
 
 
 5
 In the summer of 1985, the simmering feud erupted. At a May 3, 1985 meeting, the Executive Board, which did not want the financial abuses of the prior administration to continue during Crane's tenure, passed a resolution requiring Crane to obtain approval from the Board prior to making any expenditures for anything other than day-to-day operating costs. Crane objected to this resolution, and he ignored it because he felt it infringed on his authority as the union local's principal officer. Shortly thereafter, Viviano unilaterally discharged two business agents whom he felt were not needed, despite Crane's specific direction not to discharge them. When the Board supported Viviano by refusing to authorize the payments of these two agents' salaries, Crane responded by terminating Viviano and two other people as employees of the union local on June 28, 1985.
 
 
 6
 Following a special membership meeting in July, Viviano and the two other dischargees filed internal union charges against Crane and the union local. The Board then conducted an allegedly-unauthorized trial, and it ordered that Viviano and the others be reinstated. Crane refused to comply with that order; instead, he filed internal union charges against the members of the Board who had conducted the "trial."
 
 
 7
 By October 1985, Crane and Viviano were so at odds that they could not even agree on when to schedule Board meetings. When five of the seven Board members refused to postpone the October Board meeting at Crane's request, he retaliated by instructing the union local's staff not to provide the Board with the union local's financial records. In response, the remaining Board members suspended him from office. Crane, who ignored his suspension, advised the Teamsters Joint Council 43 on November 5, 1985, that the union local was "virtually unable to conduct the business of [its] members." Crane asked "the joint council to do whatever is necessary and take whatever actions are necessary to restore the integrity of this Local Union."
 
 
 8
 On November 25, 1985, Jackie Presser placed the union local into an emergency, temporary trusteeship, and he appointed Edward Kantzler to act as trustee. No one disputes that Presser complied with the procedures set out in the international union's Constitution. Rather, this appeal concerns the substance of the decision to impose a trusteeship.
 
 
 9
 On December 18, 1985, Presser formally notified all of the officers and members of the union local that a hearing would be held on January 7, 1986, to determine whether the emergency trusteeship should be continued. The hearing was conducted by a three-person panel selected by Presser. Only 27 of the union local's 7,000 members attended the hearing. None of the plaintiffs in this litigation were present: apparently many members were under the impression that the meeting would last all day so that members with different work schedules could still attend. But the meeting, which began at 9:00 a.m., was adjourned by 10:00 a.m. Moreover, all five people who testified, one being Trustee Kantzler, supported the imposition of the trusteeship. None of these witnesses were cross-examined, and no one spoke against the trusteeship. On January 15, 1986, Presser formally adopted the hearing panel's recommendation that the trusteeship be maintained.
 
 
 10
 The amended complaint filed by the union local and the other plaintiffs, including Viviano, alleged that several violations had been committed by the international union, Presser, Crane, and the other defendants. On May 2, 1986, however, after a six-day trial, the district court issued a partial summary judgment in favor of the defendants with respect to all of the claims, except the plaintiff's challenge to the trusteeship.
 
 
 11
 On July 21, 1986, after conducting additional hearings, the district court invalidated the trusteeship. The court concluded that, although the international union had complied with all of the necessary procedural requirements for imposing a trusteeship, the union local had proven by clear and convincing evidence that the trusteeship was not imposed in good faith for one of the allowable purposes listed in 29 U.S.C. Sec. 462, as required by 29 U.S.C. Sec. 464(c). The court ordered that the plaintiffs who were removed from their offices as a result of the trusteeship be compensated by the international union for their lost wages. The court also ordered that a new election of officers be held, and it required the international union to pay the costs and expenses of that election. For the reasons set out below, we disagree with the district court's determinations.
 
 
 12
 The focus of any inquiry into the establishment of a trusteeship must be on Section 304(c) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. Sec. 464(c), which provides, in relevant part, that:
 
 
 13
 In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and by-laws and authorized or ratified after a fair hearing ... shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.
 
 
 14
 The above section indicates that for a union local to challenge successfully the imposition of a trusteeship, it must either demonstrate that the trusteeship was not imposed in conformity with procedural requirements, or, it must produce "clear and convincing" proof that the trusteeship was not established or maintained in good faith for a purpose allowed by statute. National Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 921 (2nd Cir.1971).
 
 
 15
 On the question of procedural regularity, the lower court found that the international did "follow all the proper procedural guidelines when imposing the trusteeship." No appeal was filed challenging this finding. Our analysis proceeds, therefore, with the understanding that the absolute requirement of a fair and proper hearing, a prerequisite for the imposition of a valid trusteeship, having been met. See, e.g., C.A.P.E. Local Union v. International Bhd. of Painters, 598 F.Supp. 1056 (D.N.J.1984); Luggage Workers Union v. International Leather Goods, Plastics & Novelty Workers Union, 316 F.Supp. 500 (D.Del.1970); Jolly v. Gorman, 428 F.2d 960 (5th Cir.1970); United Mine Workers v. United Mine Workers, 475 F.2d 906 (D.C.Cir.1973); Retail Clerks Union v. Retail Clerks Int'l Ass'n, 479 F.2d 54 (9th Cir.1973).
 
 
 16
 We turn now to the question of whether the lower court erred when it found that the union local had succeeded in proving by clear and convincing evidence that the trusteeship was not imposed in good faith for allowable purposes. Section 462 of Title 29 defines the purposes allowable for the imposition of a trusteeship. In relevant part, it provides for the following allowable purposes:
 
 
 17
 for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
 
 
 18
 A careful reading of the district court's opinion leaves us with the firm conviction that the court erroneously substituted its own judgment for that of Jackie Presser as to the need for the imposition of a trusteeship in Local 406. The proper role for the court is solely to determine whether the union local had demonstrated by "clear and convincing proof that the trusteeship was not established or maintained in good faith." And good faith must be assessed by reference to the purposes outlined in Section 462 of Title 29.
 
 
 19
 Once a court has concluded that a trusteeship was imposed in a procedurally proper manner, that trusteeship must be presumed valid. That presumption does not attach if it can be proven that the trusteeship was not established in good faith for a purpose allowable under Section 462. We will not set aside the judgment of the authorized union official as long as there is "substantial evidence" upon which the union official acted. Bailey v. Dixon, 314 F.Supp. 452, 454 (E.D.La.1970), aff'd., 451 F.2d 160 (5th Cir.1971), cert. denied, 406 U.S. 945, 925 Ct. 2043, 32 L.Ed.2d 332 (1972). If there is no substantial evidence which can be pointed to as justifying the decision of the union officials, then it is not likely that the imposition of the trusteeship was in good faith.
 
 
 20
 In the course of its opinion, the district court noted that "the evidence presented does not persuade the court that [the enmity between Crane and Viviano] render[ed] the local union 'incapable of self government,' nor has it 'paralyzed the administration of the local' causing the officers to be incapable of 'fulfilling their duties and obligations.' " The lower court also stated that it was "not convinced ... the financial position [of] the local was in as dire straits as the International Union would have it believe...." We believe this substitution of the district court's judgment for that of officials of the international union is not warranted. Rather, the focus must be on whether the trusteeship was imposed as part of an honest, sincere good faith effort to achieve legitimate goals. We believe that the district court erred when it found that while factionalism and political in-fighting could be a legitimate basis for the imposition of a trusteeship, it nevertheless concluded that this case did not justify such a "heavy-handed remedy." Determinations as to whether other, less severe measure may have remedied the union local's problems and achieved the international union's objectives is not within our province. As the district court in C.A.P.E., 598 F.Supp. at 1073, noted, "it is not the court's function to" determine whether "less intrusive measures ... might have sufficed." Cf. Gordon v. Laborers' Int'l, 490 F.2d 133, 137 (10th Cir.1974). Indeed, it is not for the courts to question whether trusteeships are a heavy-handed remedy when Congress, itself, has found trusteeships to be "among the most effective devices which responsible international officers have to ensure order within their organization ... [and] to preserve the integrity and stability of the organization itself." S.Rep. No. 187, 86th Cong., 1st Sess., at 17 (1959), U.S.Code Cong. & Admin.News 1959, pp. 2318, 2333.
 
 
 21
 Courts reviewing trusteeships established pursuant to proper procedure have to recognize that Congress has expressed its intent that such trusteeships are presumed valid unless they were established in bad faith or for unallowable reasons. As the Eighth Circuit held in Hansen v. Guyette, 814 F.2d 547, 550 (8th Cir.1987), a local can "overcome this presumption only upon clear and convincing proof in the district court of improper purpose or bad faith." Congress made clear the purpose of the presumption:
 
 
 22
 To make it plain that an honest decision by the international officials is not to be overturned during the first 18 months of the receivership upon a question of fact or of degree or of judgment as to the necessity for imposing it. The initial suspension of local self-government is usually warranted by the needs of the organization, and it would unreasonably impair the independence of labor unions to allow much scope at this point for the Government to review the judgment of union officials upon the needs of the organization or the best means of effectuating them. On the other hand, if dishonesty or bad faith is proved, the bill provides for a direct and effective remedy."
 
 
 23
 S.Rep. No. 187, 86th Cong., 1st Sess., at 18 (1959), reprinted in 1959 U.S.Code Cong. & Admin.News 2334. The language from the House Report is identical. See 1959 U.S.Code Cong. & Admin.News. 2436.
 
 
 24
 We believe the language of section 304, and these statements, indicate that courts must give deference to the decision of international unions to impose trusteeships upon their locals, absent a showing of dishonesty or bad faith. As we noted earlier, this focus on the international union's intent must be referenced to the purposes allowed in 29 U.S.C. Sec. 462. While it is possible to prove an absence of good faith by proving that the proffered reasons for imposing the trusteeship are pretextual, that is difficult to do given that such proof must be "clear and convincing." Furthermore, even if a union local can prove that the trusteeship was not established for a purpose allowable under 29 U.S.C. Sec. 462, that merely eliminates the presumption of validity. It does not resolve the ultimate question. The purposes found in section 462 are the only purposes, which, if pursued in good faith, allow for a presumption of validity. This is not to say that there are not other purposes not found in section 462 that may justify the imposition of a trusteeship but which are not presumptively valid. As the U.S. Senate and House agreed, "the bill does not specify in detail all of the reasons for which a trusteeship may be imposed." 1959 U.S.Code Cong. & Admin.News 2334. We reserve for another day the resolution of the potentially difficult questions of burdens of proof in such circumstances and the exploration of what other purposes, not found in 462, may justify the imposition of a trusteeship.[1]
 
 
 25
 The case at hand is more easily resolved because, here, there has been absolutely no proof of bad faith. In fact, the lower court stated that it could "only speculate at the potential political motivations" behind the decision to recommend the trusteeship. Unless the union local can prove clearly and convincingly that the proffered reasons for establishing the trusteeship are pretextual, they must make a showing and introduce evidence of bad faith on the part of the international union. That has not been done here. There have been cases, however, where bad faith was sufficiently demonstrated such that courts could invalidate the imposition of a procedurally correct trusteeship. For instance, in Carpenters v. Dale, 118 L.R.R.M. 3160 (C.D.Calif.1985), the district court found that the intent behind establishing the trusteeship was to chill the free speech of members of the local union. The court also found that the international had acted with "unconscionability and bad faith." In Brotherhood of Painters v. Local 127, 264 F.Supp. 301, 304 (N.D.Calif.1966), the court invalidated the trusteeship after finding that it had been imposed to collect possibly illegal dues increases. Finally, in Foodworkers v. Local 919, 104 L.R.R.M. 2089, 2095 (D.Conn.1979), the court invalidated a trusteeship that had been imposed out of a personal dispute between the international and union local presidents.
 
 
 26
 Here, the union local has attempted to demonstrate the international's bad faith not by introducing any direct evidence of illegitimate motives but by arguing that the reasons offered by the international for imposing the trusteeship did not justify its decision. The level of proof introduced by the union local, however, does not come close to the "clear and convincing proof" that is required. As we noted earlier, Congress intended that decisions by international officials to impose trusteeships be upheld and not rejected on the basis of disputed facts or on disputes over the judgment or necessity for imposing a trusteeship.
 
 
 27
 There is no dispute that Local 406 was seriously beset by troubles emanating from the political fights of former running mates, Crane and Viviano. In fact, after hearing the first witness called by the local, the district court stated that it was "satisfied of this much, and that is that throughout the year of 1985, that there was chaos in Local 406." The record indicates that at the time the trusteeship was imposed, Presser had been informed that Local 406 was not being administered in accordance with the international union's regulations, and had heard that these failures were due to the lack of cooperation between Crane and Viviano. He also had evidence that the local's resources were not being properly managed and were being dissipated. While the significance of all the problems allegedly befalling Local 406 is not clear, that is not of critical importance. Rather, the focus must be on whether Jackie Presser, having been informed of these problems, acted in good faith when he imposed the trusteeship. Local 406 has not introduced "clear and convincing proof" that the international union did not act in good faith in pursuit of legitimate objectives, listed in section 462 of Title 29, when it imposed the trusteeship.
 
 
 28
 We believe that Presser could have concluded in good faith that the political factionalism in Local 406, and its attendant problems, was of such a magnitude that the imposition of a trusteeship was warranted. A local afflicted by political infighting, as manifested here, may well not be able to "carry[ ] out the legitimate objects of such labor organization." 29 U.S.C. Sec. 462. Certainly, the international's belief that this was the case was not proven by the local by "clear and convincing proof" to be derived in other than good faith. We believe Local 406 failed to introduce sufficient evidence to invalidate Congress' requirement that such trusteeships be presumed valid. Courts may not substitute their judgment for that of the officials responsible for imposing a trusteeship. Union locals may, as Congress observed, escape the imposition of a procedurally proper trusteeship only by proving bad faith or dishonesty; this may be done with direct or circumstantial evidence, but, in any event, it must be clear and convincing.
 
 
 29
 Accordingly, the decision of the district court is reversed, and the trusteeship imposed on Local Union No. 406 is held valid.
 
 
 
 *
 The Honorable Edward H. Johnstone, Chief United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The Senate and House Reports give as an example of an additional justification for the imposition of a trusteeship "the elimination of Communist or other forms of subversion."