19 F.3d 786
 145 L.R.R.M. (BNA) 2848, 127 Lab.Cas. P 11,052
 INTERNATIONAL BROTHERHOOD OF TEAMSTERS; Joseph Padellaro,
as Trustee of Local Union Number 810, affiliated
with the International Brotherhood of
Teamsters, Plaintiffs-Appellees,
v.
LOCAL UNION NUMBER 810, affiliated with the International
Brotherhood of Teamsters; Dennis Silverman; Max Sanchez;
John Chambers; Stephen Silverman; Thomas Auld; Jose
Cuevas; Mell Jones, Defendants-Appellants.
 No. 914, Docket 93-9012.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 12, 1993.
Decided March 22, 1994.
 
 Joseph E. Gulmi, New York City (Vincent F. Pitta, Barry N. Saltzman, Eve I. Klein, Annmarie P. Venuti, David L. Weissman, Shea & Gould, of counsel), for defendants-appellants.
 Richard M. Seltzer, New York City (Dominique Bravo, Richard A. Brook, Joseph J. Vitale, Cohen, Weiss and Simon, of counsel), for plaintiffs-appellees.
 Before: CARDAMONE, JACOBS, and GOODWIN*, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This is an appeal by a local teamsters union from a grant of a preliminary injunction that enjoined it from resisting, and directed it instead to submit to a temporary trusteeship imposed upon it by its parent, the International Brotherhood of Teamsters. The analytical framework upon which we rest our decision has two main components: one is the notion that federal courts should be slow to rush into what is essentially a matter of internal union governance; and the other, a corollary of the first, is that Congress--believing that an ounce of prevention today is worth a pound of cure tomorrow--has empowered the general president of a parent union to impose a temporary trusteeship on one of its locals when convinced an emergency exists warranting such action.
 
 
 2
 Defendants are Local Teamsters Union Number 810 (Local 810), and its officers, Dennis Silverman, Max Sanchez, John Chambers, Stephen Silverman, Thomas Auld, Jose Cuevas and Bruno Franco (replacing retiree Mell Jones). They appeal a memorandum and order dated September 27, 1993 and a judgment dated September 29, 1993 both by the United States District Court for the Southern District of New York (Knapp, J.). See International Bhd. of Teamsters v. Local Union No. 810, 835 F.Supp. 727 (S.D.N.Y.1993). The September 29 judgment granted a preliminary injunction to plaintiffs International Brotherhood of Teamsters (IBT) and its temporary trustee, enjoining defendants from resisting the imposition of an emergency temporary trusteeship and from refusing to deliver to Joseph Padellaro, the temporary trustee, all of Local 810's records. We affirm.
 
 BACKGROUND
 
 3
 This case arises against the backdrop of the March 14, 1989 consent decree entered into as a result of United States v. International Brotherhood of Teamsters, 88 Civ. 4486 (S.D.N.Y.). See generally United States v. International Bhd. of Teamsters, 814 F.Supp. 1165, 1167-68 (S.D.N.Y.1993) (describing consent decree). The United States had charged that the IBT General Executive Board permitted members of organized crime to exercise control over and to corrupt the international union and some of its local affiliates. The consent decree granted court-appointed officers broad power to investigate corruption and to supervise IBT until the election of a new general president. Ron Carey was elected to this post in 1991.
 
 
 4
 In the instant matter, following an investigation into Local 810, a court-appointed investigations officer levied charges of misconduct against appellants Dennis Silverman, Max Sanchez, Stephen Silverman and John Chambers, as officers and trustees of Local 810. Dennis Silverman and Max Sanchez were accused of financial improprieties, and all four officers were charged with allowing union funds to be used to pay legal expenses for a Local 810 member. As a result of these charges, Judge Frederick B. Lacey, a former federal district court judge, serving as the court-appointed independent administrator, ordered the suspensions of these officers for periods ranging from three to six months. At the time of the imposition of the temporary trusteeship at issue in this case, Dennis Silverman, president of Local 810, had begun serving his suspension and Max Sanchez was acting president.
 
 
 5
 Pursuant to one of Carey's promises in the IBT election campaign, he established in late 1992 an Ethical Practices Committee to review complaints regarding corruption or serious wrongdoing within IBT and its local affiliates. On August 25, 1993, Aaron Belk, the Administrator of the Ethical Practices Committee, uncovered information of ongoing misconduct on the part of Local 810 officials. This information was developed through conversations with two individuals, one a former business agent of the local, and the other a current delegate/business agent. The allegations included: 1) mismanaging of Local 810 pension and health and welfare funds; 2) collecting cash contributions from Local 810 business agents and staff for no apparent legitimate reason; 3) instituting pay and severance pay increases for Local 810 officers without approval of the membership; 4) paying exorbitant salary and benefits to the Silverman family; 5) paying full-time salaries to Local 810 employees who actually worked part-time; 6) failing to hold membership meetings and discouraging members from attending those meetings that were held; and 7) holding closed membership meetings limited solely to employees of Local 810 and its health and welfare fund. By letter dated August 30, 1993 Belk informed Carey of these allegations of ongoing misconduct and recommended that he place Local 810 under immediate temporary trusteeship.
 
 
 6
 Based on the allegations of financial wrongdoing and lack of democratic procedures within the local and because Local 810's officers had been suspended, Carey imposed a temporary trusteeship over Local 810 without holding a hearing. Pursuant to the International Constitution (constitution) a notice dated September 10, 1993 was sent to officers and members of Local 810 informing them of the reasons for the temporary trusteeship. Carey appointed Joseph Padellaro as temporary trustee effective September 13, 1993. On that same day Padellaro appeared at the offices of Local 810 and was there informed that the local would accept his appointment only by court order.
 
 
 7
 IBT therefore immediately filed a verified complaint in the Southern District of New York and moved for a temporary restraining order to enjoin Local 810 from refusing to recognize the temporary trusteeship. Later that same day--September 13--the district judge signed a temporary restraining order and an order to show cause, which enforced the imposition of the temporary trusteeship, and scheduled a hearing on whether preliminary injunctive relief should be granted. After a September 24, 1993 hearing on the preliminary injunction, the district court refused to hold a full evidentiary hearing on whether an emergency in fact existed and instead determined that the subject of the inquiry before it was whether Carey acted in good faith when he imposed the temporary trusteeship.
 
 
 8
 By judgment dated September 29, 1993, Judge Knapp granted a preliminary injunction to IBT and Joseph Padellaro, enjoining Local 810 from resisting imposition of the temporary trusteeship. Local 810 and its officers appeal contending the district court not only should have examined IBT General President Carey's good faith in imposing the temporary trusteeship, but also should have taken proof on whether an emergency in fact existed when IBT, without holding a hearing, imposed the temporary trusteeship.
 
 DISCUSSION
 
 9
 I. Issuance of Preliminary Injunction--In General
 
 
 10
 We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion. See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir.1990). Abuse of discretion usually consists of clearly erroneous findings of fact or the application of an incorrect legal standard. See Chemical Bank v. Haseotes, 13 F.3d 569, 572 (2d Cir.1994) (per curiam). Ordinarily, a party seeking a preliminary injunction must meet the burden established by our now familiar test: 1) irreparable harm should injunctive relief not be granted and 2) either a likelihood of success on the merits, or sufficiently serious factual questions making a fair ground for litigation with a balance of hardships tipping in the movant's favor. See id. at 572-73; Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir.1991); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) (per curiam).
 
 
 11
 Although the burdens assigned to the respective parties are no different in the labor trusteeship context, the scope of the examination by the district court is limited--because of the statutory scheme to be discussed in a moment--to whether the parent union showed a likelihood of success on the merits of its claim of right to impose the trusteeship and whether it would suffer irreparable harm should the preliminary injunction permitting a trusteeship not be granted. See National Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 923 (2d Cir.1971). Once the parent organization demonstrates likelihood of success on the merits of its claim of right to impose the trusteeship, the burden shifts to the local to show either that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose. Id.; see also Teamsters Local Union No. 406 v. Crane, 848 F.2d 709, 712 (6th Cir.1988). If the familiar burden associated with obtaining a preliminary injunction were inflexibly applied to a parent union without regard to Congress' aim in the labor trusteeship context, a resisting local could easily thwart that aim simply by refusing to accept the imposition of the trusteeship. See Sombrotto, 449 F.2d at 920.
 
 
 12
 II. Statutory Framework for Temporary Trusteeship
 
 
 13
 We turn now to Congress' statutory scheme. The statute under which the district court derives its authority to enjoin Local 810 is the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Secs. 461-466 (1988) (Reporting and Disclosure Act). Section 464(c) provides:
 
 
 14
 In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.
 
 
 15
 The Senate Report reveals that the purpose of the Reporting and Disclosure Act is to discourage improper conduct of union officials by making such conduct unprofitable. To accomplish this end, activities and arrangements engaged in by such officials are required to be reported, and are subject to full disclosure. See S.Rep. No. 187, 86th Cong., 1st Sess. 5 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2321. In implementing this purpose a national or international labor organization, as here, may impose a trusteeship over one of its subordinate bodies to eradicate corruption or financial malfeasance, to ensure the performance of collective bargaining agreements, to restore democratic procedures or to ensure any other legitimate objects of a subordinate labor organization. See 29 U.S.C. Sec. 462.
 
 
 16
 To prevent federal courts from intervening in internal union affairs, Congress established for the first 18 months after a trusteeship is imposed a presumption of its validity. This presumption does not leave open to question the judgment that prompted its imposition by making that judgment subject to a question of fact, saving only cases where dishonesty or bad faith is shown. See Executive Bd. Local 1302, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 477 F.2d 612, 615 (2d Cir.1973) (quoting S.Rep. No. 187, 86th Cong., 1st Sess. 18 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2334 (S.Rep. 187); H.Rep. No. 741, 86th Cong., 1st Sess. 14 (1959), reprinted in 1959 U.S.C.C.A.N. 2424, 2436 (H.Rep. 741)). It is because of the existence of the statutory presumption of validity in Sec. 464(c) that the burden shifts to the local to demonstrate dishonesty or bad faith.
 
 
 17
 In Sombrotto we held that although Sec. 464(a) expressly authorizes federal courts to grant injunctions only to prevent the imposition and maintenance of an illegal trusteeship--and that the law was not designed to impose a trusteeship--the statute nonetheless clearly allows a parent union to impose a trusteeship upon a local, if the parent's constitution provides for it, and if the purpose is one of those enumerated in Sec. 462. See 449 F.2d at 918-19. Were it otherwise, the trusteeship scheme Congress envisioned would be a nullity. Such trusteeships effectively aid in monitoring the democratic processes of local labor organizations and help prevent the infiltration of criminal elements and corruption. Hence, the salutary purposes of Sec. 462 are to be accomplished by the use of the Sec. 464 trusteeships. See Becker v. Industrial Union of Marine & Shipbuilding Workers of Am., 900 F.2d 761, 767 (4th Cir.1990) (citing H.Rep. 741 at 13, S.Rep. 187 at 17).
 
 
 18
 III. Constitution Governing Relations Between IBT and Local 810
 
 
 19
 The relationship between plaintiff IBT and defendant Local 810 is governed by the constitution and bylaws of IBT. The constitution is not only a contract between IBT and its locals, it also may be characterized as a "contract" between labor organizations representing employees in an "industry affecting commerce" within the meaning of Secs. 301 and 501 of the Labor Management Relations Act of 1947, 29 U.S.C. Secs. 185(a) and 142(1) (1988). Article VI, Sec. 5(a) of the constitution states:
 
 
 20
 If the General President has or receives information which leads him to believe that any of the officers of a Local Union ... are dishonest or incompetent, or that such organization is not being conducted in accordance with the Constitution and laws of the International Union or for the benefit of the membership, or is being conducted in such a manner as to jeopardize the interests of the International Union or its subordinate bodies, or if the General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice [or] restoring democratic procedures ... he may appoint a temporary Trustee to take charge and control of the affairs of such Local Union ... provided, however, that before the appointment of such temporary Trustee, the General President shall set a time and place for a hearing for the purpose of determining whether such temporary Trustee shall be appointed; and further provided that where, in the judgment of the General President, an emergency situation exists within the Local Union ... the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days and decision made within sixty (60) days after furnishing of the transcript of testimony.
 
 
 21
 Consequently, where a parent labor organization's constitution allows imposition of a temporary trusteeship in the case of an emergency, and the proper procedural requirements are met, a federal court may not invalidate the trusteeship, unless the local is able to show by clear and convincing evidence that the trusteeship was not established in good faith or was for a purpose not authorized by the Reporting and Disclosure Act. If the constitution provides for such a procedure, the statutory presumption of validity arises even where a temporary trusteeship is imposed prior to a union hearing. See Sombrotto, 449 F.2d at 920; Becker, 900 F.2d at 769. The statutory plan plainly anticipates that litigation regarding trusteeships would go forward while the trusteeship is in effect. See 29 U.S.C. Secs. 462, 464(c).
 
 
 22
 Defendants contend the statutory presumption of validity standard does not apply in the case at hand, since to rely on it would bootstrap a temporary trusteeship imposed without a prior internal union hearing into one that is presumably valid. They maintain that in order for the presumption of validity to arise there must be a full evidentiary hearing on whether or not an emergency in fact exists.
 
 
 23
 This view misreads Sec. 464(c) of the Reporting and Disclosure Act. That section requires a national or international labor organization to comply with the procedural requirements of its constitution when imposing a temporary trusteeship on a subordinate labor organization, and it mandates that a hearing be held either before or after imposition of the trusteeship. The constitution allows imposition of a temporary trusteeship without a prior internal hearing if "in the judgment of the General President, an emergency situation exists within the Local Union." (emphasis added). No rule states that an actual emergency must exist. If an actual emergency was required, a temporary trusteeship would never be warranted because the determination of whether an emergency in fact existed would have to be made by a hearing held prior to imposition of such trusteeship.
 
 
 24
 It is true that in the cases upon which defendants rely evidentiary hearings were held on whether or not an emergency existed. See International Bhd. of Teamsters v. Garage Employees Local Union No. 272, No. 92 Civ. 5445, 1992 WL 235173, 1992 U.S. Dist. LEXIS 13455 (S.D.N.Y. Sept. 8, 1992); Tile, Marble, Terrazzo, Finishers, Shop Workers, Granite Cutters Int'l Union v. Granite Cutters & Marble Setters & Handlers, Local 106, 621 F.Supp. 1188 (E.D.N.Y.1985), aff'd without op., 805 F.2d 391 (2d Cir.1986); Retail, Wholesale, Dep't Store Union v. National Union of Hosp. & Health Care Employees, 577 F.Supp. 29 (S.D.N.Y.1983).
 
 
 25
 Retail, Wholesale, Dep't Store Union is inapt because the parties in that case stipulated that the hearing on the motion for the preliminary injunction would be combined with the trial on the merits. 577 F.Supp. 29, 30. This is an unusual procedural posture as in most cases a union's constitution will provide for an internal union hearing, not a district court hearing on the merits. Garage Employees ruled that "[t]he standards ordinarily applicable to a motion for a preliminary injunction do not obtain when a trusteeship is sought to be enforced," 1992 WL 235173 at * 2, 1992 U.S. Dist. LEXIS 13455 at * 5-6, and then went on to hold a hearing on whether there was an emergency in fact, see id. at * 2, 1992 U.S. Dist. LEXIS 13455 at * 4. In Granite Cutters, the district court recognized that the standard for issuing a preliminary injunction was modified--but not eliminated--in the trusteeship context by placing the burden on the defendant to show invalidity by clear and convincing evidence, see 621 F.Supp. at 1191, and that the trusteeship was proper only if imposed according to the union constitution, see id. at 1191, n. 1. That court also held a hearing on whether an emergency existed. Presumably, the Granite Cutters court thought a finding of an actual existence of an emergency was a procedural requirement, even though the union constitution stated that a temporary trusteeship could be imposed if upon the judgment of the general president or secretary-treasurer such circumstance existed. See id. at 1190.
 
 
 26
 Contrary to the tenor of Garage Employees and Granite Cutters, were an evidentiary hearing in district court the rule, a local could demand a hearing in federal district court simply by opposing the parent union's attempt to impose a temporary trusteeship. Such would obviously impair the legislative design to eliminate the criminal element and corruption from the teamsters union by delaying prompt action when emergency circumstances warrant it. Hence, quite plainly the temporary trusteeship imposed for the purposes envisioned by Sec. 462 of the Reporting and Disclosure Act may not so easily be thwarted.
 
 
 27
 IV. Requirements for Imposition of a Temporary Trusteeship on Local 810
 
 
 28
 As IBT sought to impose a temporary trusteeship on Local 810 without holding a prior internal union hearing, we assume it was invoking the emergency provisions of Article VI, Sec. 5(a) of its constitution. By seeking an injunction in district court, it had of course the familiar burden of showing a likelihood of success on the merits of its claim of right to impose such a trusteeship and irreparable injury should injunctive relief not be granted. Once the parent organization demonstrates likelihood of success on the merits of its claim of right to impose the trusteeship and irreparable harm if it is not, then in light of the Reporting and Disclosure Act's provisions the burden shifts to the local to show that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose. See Crane, 848 F.2d at 712. Discussion passes to whether these preliminary injunction requirements were met in the present instance.
 
 A. Likelihood of Success on the Merits
 
 29
 IBT's burden was to demonstrate that the purpose for imposing the temporary trusteeship was authorized by its constitution and that the trusteeship should be imposed without a prior hearing. Article VI, Sec. 5(a) of that instrument provides for imposition of a temporary trusteeship "if the General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice [or] restoring democratic procedures." A temporary trusteeship, as already stated, may be imposed without a hearing where "in the judgment of the General President, an emergency situation exists within the Local Union." Emergency is defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Webster's Collegiate Dictionary (9th ed. 1989). This definition of "emergency" applies to the instant case. In order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within the local was developing suddenly and unexpectedly or through an unforeseen combination of circumstances; that the situation was one implicating corruption, financial malpractice or undemocratic procedures; and that the circumstances demanded immediate action.
 
 
 30
 So long as the reasons for implementing the temporary trusteeship implicated any of these concerns, it is not up to the courts to invalidate Carey's view that the situation constituted an emergency. After all, the constitution from which the general president derived his power to act is binding as well on Local 810 as a subordinate body of that parent union. See Gurton v. Arons, 339 F.2d 371, 375 (2d Cir.1964); see also Stelling v. International Bhd. of Elec. Workers Local Union No. 1547, 587 F.2d 1379, 1389, n. 10 (9th Cir.1978) (indicating that determination of whether an officer's act under union constitution is patently unreasonable is made from the officer's viewpoint at the time, not from court's perspective with the benefit of hindsight), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); Air Wis. Pilots Protection Comm. v. Sanderson, 909 F.2d 213, 218 (7th Cir.1990) (holding that union's interpretation of its own constitution and bylaws is entitled to judicial deference), cert. denied, 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1045 (1991).
 
 
 31
 IBT's moving papers demonstrate a basis for General President Carey to believe in good faith that an emergency existed requiring immediate imposition of a temporary trusteeship on Local 810. IBT's supporting affidavits show fresh allegations of financial malpractice and undemocratic procedures, including but not limited to allegations of improprieties in the administration of the pension and health and welfare fund, coercion and threats associated with donations towards a "kittie" that union employees were solicited by their officers to make, and attempts to convince members of Local 810 not to attend union meetings so that a quorum could not be obtained. Further, it was Ethical Practices Committee Administrator Belk's belief that the previous investigation performed by the independent investigator was incomplete because employees were unwilling out of fear of reprisal to divulge "inside" Local 810 information. This situation was exacerbated by the fact that the status of the local was unstable because two of its officers were then serving suspensions as a result of the previous independent investigation.
 
 
 32
 Local 810 insists these allegations are nothing but "old news in a new wrapper," especially allegations concerning the "kittie." It maintains Carey knew of the existence of this fund because the Department of Labor had done an investigation into its propriety in 1968, and that such funds were common in other locals. What Local 810 apparently fails to grasp is that the allegations that employees were coerced into making donations to the "kittie" by threats of discharge from their employment were new allegations, and these new charges were what caused the situation within the local to rise to what could reasonably have been believed to be an emergency state.
 
 
 33
 No investigative body had previously been told that coercion and threats were allegedly being used. The district court did not need to undertake a full evidentiary hearing as to whether an emergency in fact existed, as IBT's claim of right under Article VI Sec. 5(a) of the constitution became operative upon the General President's good faith belief that such a situation existed. The Reporting and Disclosure Act is not to be read as an open invitation to federal courts to busy themselves with the internal affairs of unions, a task for which they are ill-equipped, and under which Act they have no broad power to intervene. See Gurton, 339 F.2d at 375.
 
 
 34
 Local 810 was notified that an internal union hearing on the temporary trusteeship would be held. At that time, it and its officers brought the present related action seeking a temporary restraining order and preliminary injunction enjoining the internal union hearing. See Local 810 v. International Bhd. of Teamsters, 93 Civ. 7102 (S.D.N.Y.1993). Judge Knapp denied the defendants' motions for injunctive relief. Full-day internal union hearings on the temporary trusteeship were held in October and November 1993. On February 23, 1994, General President Carey determined that the trusteeship on Local 810 be continued. His decision was based on the hearing panel's findings that he acted reasonably and in good faith when he initially imposed the temporary trusteeship. The hearing panel afforded the local an opportunity to present and cross-examine witnesses and introduce evidence. Although the internal union proceeding has been concluded, the instant appeal is not moot as the question we are addressing is whether when IBT imposed the temporary trusteeship it did so within the statutory framework and pursuant to its constitution. Because IBT complied with the procedural requirements of its constitution, thereby resolving the good-faith issue, and acted within the statutory framework of the Reporting and Disclosure Act, its likelihood of success on the merits fully warranted the issuance of a preliminary injunction in support of the temporary trusteeship.
 
 B. Irreparable Harm
 
 35
 Moreover, IBT demonstrated it would suffer irreparable harm were the temporary trusteeship not imposed upon its local because such allegations of financial malpractice and undemocratic procedures severely test the allegiance of union members to their chosen leaders. This is a particularly serious matter in light of the union's history of corruption and its current efforts to establish confidence. See International Bhd. of Teamsters v. Local Union 705, Truck Drivers, Oil Drivers, Filling Station & Platform Workers, 827 F.Supp. 513, 516 (N.D.Ill.) (finding harm to the union's reputation and image constitute irreparable injury), appeal dismissed, No. 93-2789 (7th Cir.1993).
 
 C. Local 810's Burden
 
 36
 Once these burdens were met, the presumption of validity for IBT's action, granted by Sec. 464(c), was triggered. To rebut this presumption, Local 810 had the burden to demonstrate by clear and convincing evidence that the statement that an emergency existed was arrived at by Carey in bad faith, or that the temporary trusteeship was established for a purpose not authorized by 29 U.S.C. Sec. 462.
 
 
 37
 During the September 24 hearing, Local 810 had many opportunities to demonstrate Carey's bad faith in imposing the temporary trusteeship. It could have proven that by showing that Carey acted contrary to the union's best interests, acted in his own self-interest, or that his actions were so outrageous or unconscionable that even if they were in the best interests of the union, they would constitute bad faith. See Local 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 920 F.2d 1047, 1054 (1st Cir.1990) (discussing the elements of bad faith in the context of a union merger). Carey's actions, according to the definition of bad faith found in the leading law dictionary, would need to be prompted not by some honest mistake as to his duty as general president, "but by some interested or sinister motive." Black's Law Dictionary 176 (4th ed. 1968).
 
 
 38
 Instead, Local 810's references to bad faith were limited to conclusory accusations and suppositions that fell far short of the statutory standard requiring clear and convincing evidence. See 29 U.S.C. Sec. 464(c). Its strategy was to litigate the truthfulness of the allegations against it, and to concentrate on whether or not there was in fact an emergency. These contentions go to the very heart of what the internal union hearing is designed to accomplish, and are essentially unrelated to whether Carey acted in bad faith when he imposed the temporary trusteeship, which was the subject of the court hearing defendants were accorded.
 
 CONCLUSION
 
 39
 A fair reading of the record demonstrates that the district court found IBT had met its burden for obtaining injunctive relief and then shifted the burden to Local 810 to show bad faith. Because Local 810 failed to discharge its burden of proof, the district court's ruling against a full evidentiary hearing was proper, and imposition of the temporary trusteeship was not an abuse of its discretion.
 
 
 40
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 Hon. Alfred T. Goodwin, United States Court of Appeals for the Ninth Circuit, sitting by designation