**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and Joseph Padellaro as Trustee of Local Union Number 810, affiliated with the International Brotherhood of Teamsters, Plaintiffs,**

v.

**LOCAL UNION NUMBER 810, affiliated with the International Brotherhood of Teamsters, Dennis Silverman, Max Sanchez, John Chambers, Stephen Silverman, Thomas Auld, Jose Cuevas, and Mell Jones, Defendants.**

No. 93 Cr. 6388 (WK).

United States District Court,
S.D. of New York.

Sept. 27, 1993.

Richard M. Seltzer, Dominique Bravo, Cohen, Weiss and Simon, New York City, for plaintiffs.

Barry N. Saltzman, Annmarie P. Venuti, Shea & Gould, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiff International Brotherhood of Teamsters ("IBT") moves for preliminary injunctive relief to enforce an emergency trusteeship imposed by IBT General President Ron Carey ("the President") on Defendant Local Union 810 ("the Local"). Defendant opposes the motion, arguing that the Court should order an evidentiary hearing to determine whether the Emergency Trustee was appointed by the President in accordance with the IBT Constitution.[1] For the reasons that follow, plaintiff's motion is granted without further hearing.

## BACKGROUND

Following a RICO lawsuit brought against the IBT by the United States Department of Justice, *United States v. International Brotherhood of Teamsters*, (S.D.N.Y.1993) 814 F.Supp. 1165 (Edelstein, J.), the parties entered into a Consent Decree which granted officers authority to supervise the IBT and to investigate corruption. Former District Judge Frederick B. Lacey was appointed Independent Administrator for this purpose; Charles Carberry was appointed Independent Investigator. Following an investigation, Carberry brought two charges of misconduct in violation of the IBT Constitution and the Local's bylaws against several Local officials: 1) Dennis Silverman and Max Sanchez were charged with improperly increasing the amount of monthly contributions required for the Local's Staff Retirement Plan and with personally receiving the proceeds of the subsequently dissolved plan; and 2) Dennis Silverman, Max Sanchez, Stephen Silver-

man and John Chambers were charged with improperly causing the Local to pay $7,500 in legal fees to defend a Local member in criminal proceedings. In August of 1992, Judge Lacey ordered the suspension of the four officials for periods ranging from three to six months.

On or about August 31, 1993, Aaron Belk, an Administrator of the Ethical Practices Committee ("the EPC"), an internal IBT investigative body created by the President, informed the President by letter of allegations of ongoing misconduct on the part of Local officials, and recommended that he place the Local under immediate temporary trusteeship. Attached to the letter was a document entitled "TEAMSTERS LOCAL UNION 810—*Notes, August 25, 1993 Meeting.*" The first paragraph of this document reads as follows:

> As Administrator of the IBT Ethical Practices Committee, I am forwarding the following information on Teamsters Local Union 810. Based on the seriousness of this information, I am requesting that you consider a temporary Trusteesh9ip [sic] until a Trustee Panel hearing considers whether a continued Trusteeship is warranted, as a result of the following allegations and charges from Pat Monaco, a former employee of Local 810, who was recently discharged, and Louis Smith, a Delegate/Business Agent. I met with former Organizer Pat Monaco and Business Agent Louis Smith on August 25, 1993 in Somerset, New Jersey.

The allegations included in the document are as follows: 1) the Local has been using union funds to provide medical and dental coverage for non-members; 2) a "publicity

---

1. Article VI, Section 5 of the IBT Constitution provides the. General President with the following power to institute trusteeships (emphasis added):

   If the General President has or receives information which leads him to believe that any of the officers of a Local Union ... are dishonest or incompetent, or that such organization ... is being conducted in a manner as to jeopardize the interests of the International Union or its subordinate bodies, or if [he] believes that such action is necessary for the purpose of correcting corruption or financial malpractice ... [or] *restoring democratic procedures ...*

   he may appoint a temporary Trustee to take charge and control the affairs of such Local Union ... provided, however, that before the appointment of such temporary Trustee, the President shall set a time and a place for a hearing ... [but] *where, in the judgment of the President, an emergency situation exists within the Local union ... the temporary trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days ...* and further provided that in all cases the Local Union shall be advised of the reason for the appointment ...

fund" to which members contribute $10 weekly is diverted by one individual; 3) in the last five years, the Local has not had five membership meetings; 4) an employee who works fives months each year receives a full-time salary; 5) cash is extorted from employees; any complaint about this requirement leads to termination of employment; 6) members who have potentially expensive health claims are fired to save money. (Belk Decl. Ex. A).

On September 10, 1993, the President issued a Notice to the Officers and Members of Local Union 810 stating his reasons for placing Local 810 in Trusteeship. The Notice of Trusteeship sets out the President's basis for his decision as follows (Padellaro Decl. Ex. 5):

> Based upon information provided to the Ethical Practices Committee and the decision of the Independent Administrator ... it appears that the Local Union has not been conducted in accordance with the Constitution of the International Union or for the benefit of the membership and that the interests of the Local and International are being jeopardized. The IA's decision indicates that the Executive Board of Local 810 ... breached their fiduciary duties to the membership of Local 810 ...
>
> In addition to the IA decision, sources, including former business agents, have made substantial allegations to the EPC that the Local 810 officers engaged in serious financial improprieties including the following: (1) mismanagement of the Local 810 pension and health and welfare funds; (2) collecting cash from Local 810 business agents and staff for no apparent reason; (3) instituting pay and severance pay increases for officers without ... approv[al] of the Local 810 membership; (4) paying "abusive" salary and benefits to the Silverman family and paying full time salaries to Local 810 Employees who actually work part-time ...
>
> In addition, sources, including former business agents, have made substantial allegations to the EPA that Local 810 officers: (1) failed to hold general membership meetings and discouraged members from attending ... meetings which did take

place; (2) held "closed" membership meetings which were limited to the employees of Local 810 and the Local 810 health and welfare fund; and (3) refused to furnish Local Union business agents with Local Union bylaws.

Finally, the Independent Administrator has agreed that the imposition of an emergency trusteeship is appropriate.

On September 10 the President appointed a Joseph Padellaro ("Padellaro") as Temporary Emergency Trustee of the Local. Three days later Padellaro went to the office of the Local to present the Local Executive Board with his certificate of appointment and to assert control over its affairs. He found the doors of the building locked, and was soon informed by lawyers who came out of the building that the Local would not accept his appointment without a court order directing it to do so. (Padellaro Decl. at 2–3). Later that day this Court signed a Temporary Restraining Order and Order to Show Cause enforcing the President's imposition of a temporary trusteeship on Local 810.

In a declaration submitted to the Court on September 23, 1993, Padellaro reported the following preliminary findings (Supp. Padellaro Decl. at 3):

> Upon assuming the trusteeship, I immediately retained the accounting firm of F & W Accountants to conduct a forensic audit of Local 810 ... The[ir] report, while preliminary, states that "there is substantial indication that the delegates and officers misappropriated funds from Local 810, IBT," and reviews a number of improprieties, including the following: (1) the lack of documentation for the "Staff Voluntary Benevolent Fund"; (2) the requested return of employees' 1991 Christmas bonuses; (3) reimbursement of expenses for automobiles and telephones used for personal, non-business reasons; (4) undocumented expense reimbursement of union officers; (5) large amounts of "reimbursed expenses" that F & W believes was actually compensation for which W–2s or 1099s were not issued by the Local 810; and (6) monies paid by Local 810 for the lease of a car and the services of a driver for Milton

Silverman, who is not an employee or official of Local 810.

Plaintiff represents that a hearing will be held to review the President's decision to appoint an emergency trustee within thirty days of September 13, 1993 (Pl. Mem. n. 5).

## DISCUSSION

Section 304(c) of the Labor-Management Reporting and Disclosure Act ("the Act"), 29 U.S.C. § 464(c), provides an eighteen month presumption of validity for trusteeships imposed by an international union upon a subordinate body if the trusteeship has been established in accordance with the provisions of the parent's constitution and bylaws and has been .authorized or ratified after a fair hearing, unless the party opposing the trusteeship comes forward with clear and convincing evidence that the trusteeship was not established in good faith.

In *National Ass'n of Letter Carriers, AFL-CIO v. Sombrotto*, (2d Cir.1971) 449 F.2d 915 (Friendly, J.), the Second Circuit held that the ordinary standard for a grant of preliminary injunctive relief does not apply to cases such as the one at bar. The Court explained the relatively permissive standard of proof afforded by the Act to the parent union seeking to enforce a trusteeship as follows (449 F.2d at 921):

> Congress contemplated that if the parent's constitution had an appropriate provision and this was complied with, the courts were to enter the picture to invalidate a trusteeship only if the local ... chose to contest the parent's decision and was able to overcome a rather stiff presumption of validity ... Congress can hardly have wanted to leave to the local the option of reversing this statutory burden by simply ignoring the parent's mandate. Hence we believe that the parent is entitled to .a preliminary injunction imposing a trusteeship on application unless the local comes forward with adequate proof that the trusteeship is not being sought in good faith.

Defendant contends that, despite the above ruling, before the appointment of a trustee is entitled to a presumption of validity, the IBT must demonstrate that it was abiding by its own constitution in making this appointment; in other words, in order to enforce this emergency measure, the IBT must convince the Court, in a full evidentiary hearing, that an emergency exists. In support of this contention the Local makes the entirely unfounded statement that "[i]n three recent decisions, beginning in the mid 1980's and continuing to date, district courts of this circuit have held that preliminary injunctive relief imposing an 'emergency' trusteeship may be granted only after the court conducts evidentiary hearings on disputed facts going to the threshold issue of whether an emergency actually exists," (Def. Sur-Reply Br. at 2), citing *IBT v. Garage Employees Local Union 272 et al. 1992 U.S. District* (S.D.N.Y.1992) No. 92 Civ. 5445, 1992 WL 235173, 1192 Dist. Lexis 13455, (McKenna, J.), ("Local 272"); *Tile, Marble, etc. Union v. Granite Cutters, Loc. 106,* (E.D.N.Y.1985) 621 F.Supp. 1188, (McLaughlin, J.), *aff'd without opinion*, 805 F.2d 391 (2d Cir.1986), ("Granite Workers"); *Retail Wholesale, Department Store Union et al v. National Union of Hospital and Healthcare Workers, et al*, (S.D.N.Y.1984) 577 F.Supp. 29, (Sand, J.), ("Retail Wholesale").

In *Retail Wholesale*, the parties had *agreed* that the hearing on motions for preliminary injunctions and the trial on the merits be consolidated. After a two day trial, Judge Sand concluded that the parent union had appointed an emergency trustee in bad faith. This conclusion was based on proof that the purported emergency involved "a financial procedure that has been practiced for ten years and that has been fully disclosed during that period ..." 577 F.Supp. at 33. Judge Sand added that "[p]art of this Court's finding of a lack of good faith is the almost irresistible inference that this trusteeship was intended to influence the proceedings and outcome of [an imminent convention] and generally to effect policy decisions more properly left to the democratic vote of the union membership." *id.* at 33.

In *Granite Workers*, a case which did not include a single allegation of corruption on the part of the local officers, the parent union had imposed an emergency trustee after the

local union voted to disaffiliate from it in contemplation of a merger with Teamsters Local 282. After finding that, despite protestations to the contrary, the parent union had imposed the trusteeship to prevent disaffiliation, Judge McLaughlin proceeded to examine the question of whether the parent was acting in a good faith belief that it was faced with an emergency so as to justify the appointment of an emergency trustee. The Court explained its obligation to so inquire in the following fashion (621 F.Supp. at 1191):

> "Where 'emergency circumstances' are relied upon to justify the imposition of a trusteeship without a prior fair hearing, the courts will look behind the parent organization's decision to determine whether there actually were 'emergency circumstances.'" T. Kheel, *Labor Law* § 45.-04[2], at 45–33.

Thus, despite the *Sombrotto* Court's mandate that the burden be on the defendant to prove the parent's bad faith in imposing a trusteeship, the Court arrived at the following conclusion (621 F.Supp. at 1192 n. 1, emphasis added):

> [T]he Court *has the discretion* to determine independently the existence of an emergency justifying the imposition of a trusteeship prior to a hearing.

In *Local 272,* Judge McKenna offered an interpretation of *Granite Workers* which is considerably less crystalline than that suggested by defendants (No. 92 Civ. 5445, 1992 WL 235173, at *3, 1992 U.S.Dist. Lexis 13455, at 6):

> *Granite Workers,* read most favorably to defendants, requires that plaintiffs sustain the burden of showing that an emergency situation existed and also that they acted in good faith. The Court finds that, assuming *arguendo* that plaintiffs have both of these burdens, they have sustained them.

■ A final glance at *Sombrotto* convinces us that the law of this circuit does not require an evidentiary hearing in order to grant a preliminary injunction in a situation such as that before this Court (449 F.2d at 920, emphasis added):

[The party opposing the imposition of the trusteeship] would have us read § 464(c) as requiring approval of the trusteeship at a hearing conducted before its imposition in all cases. Whether a fair hearing is a *sine qua non* for the imposition of a trusteeship in all cases or merely a condition for the presumption of validity, (citations omitted), we believe § 464(c) allows for the possibility of *post hoc ratification* as well as prior approval so long as the former course is provided for in the union's constitution or bylaws and the hearing follows with reasonable promptness.

Defendant's assertions to the contrary notwithstanding, it appears to this Court that *Sombrotto* is still good law. We therefore conclude that (1) an evidentiary hearing is not required in order to make a determination of the application before us; and (2) to prevail in its opposition to the motion for a preliminary injunction, the Local bears the burden of showing that the President imposed an emergency trusteeship without a good faith belief that an emergency existed.

■ The Local has not sustained this burden. While it vigorously contests the truth of the allegations presented to the President, it has offered no evidence at oral argument or in its papers which would raise a question of fact as to whether or not the President acted in good faith by deciding that he was faced with an emergency. Therefore, the proper forum in which to determine the veracity of these allegations is the pending internal hearing required by the IBT Constitution.

### JUDGMENT

For the foregoing reasons, plaintiff is granted a preliminary injunction enjoining Local 810 from resisting imposition of the temporary Trusteeship. Let plaintiff submit a proposed judgment on twenty-four hours' notice. Until such a judgment is entered, the temporary restraining order shall remain in effect.

SO ORDERED.